WALTER J. KULINS *et al.*, Plaintiffs-Appellees, *v.* MALCO, A MICRODOT COMPANY, INC., Defendant-Appellant.

First District (5th Division)   No. 82—2258

Opinion filed January 20, 1984.

Robert H. Joyce and Peter C. Woodford, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Despres, Schwartz & Geoghegan and Marshall Patner, both of Chicago, for appellees.

JUSTICE WILSON delivered the opinion of the court:

In a class action suit seeking adjudication of employee termination allowances, plaintiffs, ex-employees of defendant corporation (Malco), moved for a summary judgment as to their right to recover severance pay under Malco's original severance pay policy (1967 policy) rather than under its modified policy (1975 policy) which acted to substantially decrease severance pay benefits. After numerous hearings, the trial court certified the class and held, as a matter of law, that the terms of the 1975 policy were to be applied prospectively only, commencing February 1, 1975, and the plaintiffs were entitled to severance pay benefits earned under the 1967 policy prior to that date.

On appeal, Malco contends that: (1) the trial court erred in granting plaintiffs' motion for summary judgment on the ground that plaintiffs did not have a vested right to severance pay under the 1967 policy; (2) the trial court erroneously certified the class; and (3) in the alternative, the trial court erred in granting summary judgment as to class members, George Walter and Fred Faje on the ground that genuine issues as to material facts exist regarding their claims for severance pay. For the reasons that follow, we affirm the judgment of the trial court as to plaintiffs' right to severance pay governed by the terms of the 1967 policy and as to class certification, and reverse its judgment to George Walter and Fred Faje.

On March 14, 1967, Malco's predecessor corporation, Malco Manufacturing Company, Inc., instituted a severance pay policy covering all salaried-exempt employees who had completed 90 days of service. This policy provided, *inter alia*, that upon termination of employment

for the reasons therein stated, an eligible employee would receive one regular week's pay (40 hours) for each complete year of service. On January 28, 1981, Microdot purchased the assets and assumed all the liabilities of Malco Manufacturing Company, Inc., which formally dissolved in April 1971. Five months later, the company's name was changed to Malco, a Microdot Company, Inc. On October 1, 1972, Malco issued a modified severance pay policy which decreased severance pay benefits to one week's pay for up to 12 months' service and two weeks' pay for over 12 months' service. However, as the following illustrates, the modified benefits did not act to decrease benefits earned under the 1967 policy:

"The current severance pay policy (effective October 1, 1972) will not apply to employees retaining two weeks or more of severance pay eligibility under the old policy.

Maintenance of the previous Malco/Mandex severance policy is intended as recognition of the benefits accumulated by long service employees.

\* \* \*

Should new Malco/Mandex benefits be provided which will supersede this former policy (policy prior to October 1, 1972), it may be terminated at the discretion of management."

Effective February 1, 1975, Malco's severance pay benefits were further modified so as to provide:

"From six months to one year of service - one week
At least one year but less than five - two weeks
At least five years but less than ten - three weeks
At least ten years but less than twenty - four weeks
More than twenty years - five weeks"

In addition, the 1975 modification contained the following provision:

"Previous severance policy and all amendments relating thereto for Malco Chicago and Mandex are hereby rescinded."

Proper notification of the modifications was sent to all eligible salaried-exempt employees, including plaintiffs.

Within two weeks after the 1975 policy was put into effect, Malco began laying off large numbers of employees. With one exception, members of the plaintiff class were laid off during the eight-month period from February 1975 through October 1976. All were paid severance pay benefits pursuant to the provisions of the 1975 policy, *i.e.*, a maximum of five weeks' pay. Plaintiffs allege that they were improperly deprived of accrued severance pay benefits earned during the term of the 1967 policy, which was in effect as to them until shortly before their termination. Plaintiffs do not contend that the

1975 modification was ineffective. Rather, they assert that its provisions cannot be applied retroactively to divest them of their rights to severance pay accrued during the term of the 1967 policy.

In November 1975, plaintiffs filed their class action suit seeking adjudication of employees' termination allowances. Thereafter, the trial court denied defendant's motion to dismiss, certified the class, and found that its members were entitled to severance pay pursuant to the provisions of defendant's 1967 policy. However, the trial court retained jurisdiction to consider and rule upon questions relating to notice to the class, computation of liability and related matters. Defendant's ensuing appeal was dismissed for lack of jurisdiction, predicated on the fact that matters of substantial controversy remained to be resolved by the trial court. (*Kulins v. Malco, Inc.* (1979), 79 Ill. App. 3d 982, 398 N.E.2d 1144.) Plaintiffs then filed an amended motion for judgment on the pleadings, seeking: (1) a limited expansion of the class; (2) computation judgment pursuant to the previous findings; (3) prejudgment interest; and (4) costs and reasonable attorney fees. Defendant responded by filing its motion for rescission of orders previously entered and for summary judgment in its favor. The trial court denied plaintiffs' motion to modify the class as well as defendants' motions for rescission and for summary judgment. Plaintiffs then moved to amend the complaint so as to include a small number of additional employees. The motion was granted and the expanded class was certified on April 1, 1981, as:

> "Each and every salaried non-exempt employee *** employed by defendant on or about October 1, 1972 and subject to the terms of defendant's 1967 severance pay plan ("plan"), and the modifications of the plan which were not held void or unenforceable by the Court, and who was severed by defendant from its payroll after that date, but not discharged for cause, and thereby has become eligible for the payments under the plan ***."

On February 2, 1982, the trial court granted plaintiffs' motion for summary judgment regarding the respective severance pay amounts earned by plaintiffs as of February 1, 1975, under the 1967 policy, less any payments previously made to them, but reserved its ruling as to class member Fred Faje who had had his weekly salary reduced from $402.92 to $288.46 six weeks prior to his termination, resulting in a reduced rate for computation of severance pay benefits. Faje claimed that his benefits should have been calculated upon his weekly salary prior to the decrease. Pending the court's ruling as to Faje, defendant filed its motion to reconsider, requesting the court, *inter alia*, to deny

summary judgment as to class member George Walter who had refused Malco's offer of continued employment at its Pennsylvania plant. Pursuant to the 1967 policy, employees whose jobs had been eliminated and who subsequently rejected a transfer within the company to a similar position at a comparable salary were ineligible for severance pay. Following extensive arguments, the trial court granted plaintiff's motion for summary judgment as to Faje, holding that Faje's severance allowance was to be computed on the higher weekly rate of pay, and denied defendant's motion to reconsider. Defendant appealed.

OPINION

■■ We shall first address the issue as to the validity and enforceability of the severance pay modifications to the 1967 policy. Defendant argues extensively in its brief that plaintiffs were employees at will of defendant and that they manifested their acceptance of the severance pay modifications by their continued employment. We acknowledge defendant's well-researched argument, but find it superfluous for the simple reasons that there is no issue at bar regarding these two contentions. Plaintiffs concur that they were employees at will and that their continued employment constituted acceptance of the modification. Instead, the issue before this court is whether plaintiffs' right to severance pay benefits pursuant to the provisions of the 1967 policy were vested or accrued,[1] thereby precluding retroactive application of the 1975 modification. We conclude that they were.

The issue of whether severance pay benefits accrue or vest during the term of an employment at will contract has not previously been presented to an appellate tribunal of this State. However, there are numerous decisions in other jurisdictions which, although not on point, are persuasive as to the relevant substantive and public policy considerations necessary to arrive at an equitable conclusion for all parties. Preliminarily, we note that although the terms of a collective bargaining agreement are not at issue in the present case, because termination pay provisions are to be identically construed whether contained in a formal written agreement or in a corporate personnel policy that becomes part of the understood employment agreement, we are not precluded from considering cases which construe collective

---

[1]The interchangeability of these terms is evidenced by the following definitions found in Black's Law Dictionary 37, 1734 (rev. 4th ed. 1968):
  (1) Accrue - "In past tense, in sense of due and payable; vested."
  (2) Vested - "Fixed; accrued; settled; absolute."

bargaining agreements. (*Chapin v. Fairchild Camera & Instrument Corp.* (1973), 31 Cal. App. 3d 192, 197, 107 Cal. Rptr. 111, 114.) While the negotiation stage for each may differ, both have as their ultimate purpose the common understanding of the terms and conditions of employment. See *Owens v. Press Publishing Co.* (1956), 20 N.J. 537, 120 A.2d 442.

Defendant contends that if this court should read a vesting requirement into Malco's 1967 policy, it would be intruding into an area preempted by the Employee Retirement Income Security Act (29 U.S.C. sec. 1001 *et seq.* (1976)) (ERISA) and would be in direct conflict with ERISA's provision which does not require vesting under severance plans. (29 U.S.C. sec. 1051(1) (1976).) In raising this point for the first time on appeal,[2] defendant does not attempt to allege that the present cause of action is governed by ERISA,[3] rather defendant merely "suggests" that ERISA's preemption provision prohibit the announcement of a "new rule of law." The fallacy in defendant's suggestion" lies in its belief that this court must announce a "new rule of law" in order for the 1967 policy provisions to be held enforceable as to plaintiffs. To the contrary, our decision is grounded in well-established principles of contract law which in no way conflict with the provisions of ERISA. Moreover, contrary to defendant's "suggestion," the vesting provisions of ERISA do not preclude the vesting of severance pay plans; they merely state that vesting is not required.

Because of the benefit to the employees and the character of the inducement by the employer, severance pay has frequently been characterized as a form of deferred compensation, earned in part each week that the employee works during the term of the contract and payable on discharge from employment, provided such discharge is not induced by misconduct. (*Lucas v. Seagrave Corp.* (D. Minn. 1967), 277 F. Supp. 338, 343; *UAW v. Defiance Industries, Inc.* (N.D. Ohio 1966), 251 F. Supp, 650, 653-54. See *Rose City Transit Co. v. City of Portland* (1974), 18 Or. App. 369, 525 P.2d 1325, *aff'd* (1975), 271 Or. 588, 533 P.2d 339.) It is a benefit for which employees work as much

---

[2]Although defendant's failure to raise this argument at trial has waived this issue for review (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 303, 443 N.E.2d 575), in the interests of a comprehensive discussion, we shall briefly address the compatibility of our decision with the cited provisions of ERISA.

[3]The cause of action at bar arose at the time of the first policy modification in 1972, thereby rendering inapplicable the provisions of ERISA which apply only to those causes of action which arose subsequent to January 1, 1975.

as they work for any other benefit held out to them as compensation by the employer (*Martin v. Mann Merchandising, Inc.* (Tex. Civ. App. 1978), 570 S.W.2d 208, 210), and one which accrues during each work year that the agreement is in effect, not merely on the date that it becomes payable (*Botany Mills, Inc. v. Textile Workers Union of America* (1958), 50 N.J. Super. 18, 30, 141 A.2d 107, 113). When services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or any other form of compensation (*Livestock Feeds, Inc. v. Local 1634, Congress of Industrial Workers* (1954), 221 Miss. 492, 502-03, 73 So. 2d 128, 132), and the lack of a promise to vest does not revoke the employer's obligation to pay. The employer must return those benefits derived from the continued employment conferred by the employee. *Lucas v. Seagrave Corp.* (D. Minn. 1967), 277 F. Supp. 338, 345.

Defendant argues that because the right to severance pay benefits is contingent upon satisfaction of the eligibility criteria, it cannot be vested. We disagree and draw the distinction between the right to accrue severance pay benefits which is contingent upon the condition precedent[4] of length of service, and the right to receive payments which is contingent upon the condition[5] of termination within the terms of the policy. Once the service condition is satisfied, the benefit derived from that term of service is vested and can be divested only by failure to satisfy the eligibility provisions. In other words, those provisions act only to divest a vested right; they do not prevent vesting from occurring initially. In the present case, pursuant to the 1967 policy, for every year of service, an employee's right to one week's severance pay is vested. These rights continue to accumulate in direct proportion to the length of the employee's employment. Malco's severance pay policies are void of any provision which even suggests that discharge from employment during the term of the contract is a condition *sine qua non* to enforcement of the accrued right. If Malco desired to include other conditions, it could have done so at the time of

---

[4]A condition precedent is "one which *** is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Black's Law Dictionary 366 (rev. 4th ed. 1968).

[5]A condition subsequent is "one annexed to an estate already vested, by the performance of which such estate is kept and continued, and by the failure of non-performance of which it is defeated; or it is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition." Black's Law Dictionary 366 (rev. 4th ed. 1968).

drafting. This court cannot read such conditions into the policy at this time. It is axiomatic that a court may not rewrite a contract to suit one of the parties, but must enforce the terms as written. See *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 1096, 398 N.E.2d 103.

Based upon the aforementioned, we conclude that the right to earn severance pay, a form of deferred compensation, arose and vested during the term of the 1967 policy and, consequently, survived the termination or modification of that policy. However, once the policy was modified on February 1, 1975, accrual under the 1967 policy terms ended. (See *Gebhard v. Royce Aluminum Corp.* (1st Cir. 1961), 296 F.2d 17, 19; *Dangott v. ASG Industries, Inc.* (Okla. 1976), 558 P.2d 379, 384.) To hold otherwise would relegate the promise of severance pay to the illusory status of an offer revocable at the pleasure of the corporation and result in a harsh forfeiture to loyal, long-term employees. (*Fortune v. National Cash Register Co.* (1977), 373 Mass. 96, 103-04, 364 N.E.2d 1251, 1257; *Hercules Powder Co. v. Brookfield* (1949), 189 Va. 531, 53 S.E.2d 804, 809. See *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) While plaintiffs' continued employment at Malco may have manifested acceptance of the terms of the 1975 policy, it cannot reasonably be said that their continued employment manifested their agreement to relinquish benefits earned prior to the modification. In making this determination, we emphasize that our decision does not affect the right of employers at will to modify severance pay provisions. It merely confines application of such modifications to prospective use only. In our opinion, this holding is in line with both reason and justice.

■ The doctrine of promissory estoppel offers further support to our conclusion that severance pay, as a form of deferred compensation, is an accrued or vested right, incapable of retroactive modification. Promissory estoppel, an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct, is comprised of the following elements: (1) a promise (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee, (3) which induces such action or forbearance, and (4) which must be enforced in order to avoid injustice. (*Feinberg v. Pfeiffer Co.* (Mo. App. 1959), 322 S.W.2d 163, 167-68; *Hilton v. Alexander & Baldwin, Inc.* (1965), 66 Wash. 2d 30, 31-32, 400 P.2d 772, 773-74.) In the present case, pursuant to the terms of the 1967 policy, Malco promised to pay severance benefits to plaintiffs in return for their continued employment. This promise induced plain-

tiffs to forego their right to seek and accept other employment which resulted in the benefit to Malco of industrial peace and avoidance of unrest on the part of its employees during a time of financial difficulty. Plaintiffs' reliance is presumed from both the contractual nature of their employment and from the continuation of their employment. (See *Anthony v. Jersey Central Power & Light Co.* (1958), 51 N.J. Super. 139, 143 A.2d 762; *Martin v. Mann Merchandising, Inc.* (Tex. Civ. App. 1978), 570 S.W.2d 208.) To allow Malco to retract its promise on the eve of termination, after years of reliance by plaintiffs would run counter to the fundamental principles of equity and justice, and raise a serious question as to Malco's compliance with the implied covenant of good faith, central to every contract. (See *Rao v. Rao* (7th Cir. 1983), 718 F.2d 219.) In reaching this determination, we recognize that an employer is entitled to be motivated by and to serve its own legitimate business interests; that an employer must have wide latitude in deciding corporate policy; and that an employer needs flexibility in the face of changing circumstances. However, we do not believe that Malco's right to make prospective decisions in its own interest is unduly hampered by a denial of retroactive application.

Finally we shall address the Illinois decision, *Pinto v. Zenith Radio Corp.* (N.D. Ill. 1979), 480 F. Supp. 361, *aff'd* (7th Cir. 1980), 618 F.2d 110, upon which defendant relies as support for its position that plaintiffs' rights to severance pay benefits under the 1967 policy did not vest. Our review of *Pinto* finds it to be distinguishable on points which were central to that court's determination. In *Pinto*, approximately two months before defendant sold the division for which plaintiff worked, defendant amended its severance pay policy to specifically exclude severance pay to employees who were terminated due to divestiture. Although plaintiff was immediately hired by the successor corporation, he brought suit against defendant under the benefit plan enforcement provisions of ERISA, claiming that he had a vested right to severance pay under the original policy which could not be divested by amendment. In holding that plaintiff's rights to severance pay under the original policy had not vested,[6] the court looked to the policy provisions before it and found that: (1) the policy expressly stated that "[s]everance pay is not automatic," and was to be determined on a "case-by-case" basis; (2) the policy's express purpose for severance pay, *i.e.*, "[t]o assist salaried employees through a period of readjust-

---

[6]The *Pinto* court's holding obviated the need to discuss the effectiveness of the modification. Had that point been discussed, the case would clearly have been applicable to the present facts.

ment while seeking another position" was not applicable to plaintiff; and (3) the policy provided that severance pay may terminate if the employee was re-employed during the severance period, which, obviously, the plaintiff was. On plaintiff's motion for reconsideration, the *Pinto* court recognized that other courts have held that severance pay is a vested benefit, but found that the terms of the specific policy before it precluded that conclusion.

The present case is clearly distinguishable. First, Malco's 1967 policy contained no express language as to the discretionary accrual of severance pay benefits. Rather, the language affirmatively expressed a right to earn the benefits and conditioned payment on involuntary termination without cause. Second, the stated purpose of Malco's policy, *i.e.*, "[t]o provide for a method of payment for those employees who are severed from the company's payroll," was directly applicable to plaintiffs. Third, plaintiffs were not immediately re-employed by a successor corporation, a fact which directly impacts on the equities of the situation. Accordingly, because the *Pinto* court's decision was predicated upon the terms of a specific severance pay policy which contained terms substantially dissimilar to those before this court, we find in the *Pinto* decision unpersuasive. For the aforementioned reasons, we affirm the judgment of the trial court as to plaintiffs' right to severance pay pursuant to the provisions of the 1967 policy.

We shall next address the issue as to whether class certification was properly granted. Defendant claims that plaintiffs have never even attempted to make a show of impracticability of joinder, one of the statutory requisites to class certification. Ill. Rev. Stat. 1981, ch. 110, par. 2—801.

Section 2—801 of the Code of Civil Procedure provides that an action may be maintained as a class action only if the court finds that the following requisites have been met:

> (1) The class is so numerous that joinder of all members is impracticable.

> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

> (3) The representative parties will fairly and adequately protect the interest of the class.

> (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

Further, the proponent of a class action has the burden of establishing the requisites of section 2—801 (*Dobbs v. Chase* (1981), 94 Ill. App. 3d

177, 181, 418 N.E.2d 919), and the determination of whether those requisites have been met rests within the discretion of the trial court whose determination will not be disturbed absent a clear abuse of that discretion. *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 711, 415 N.E.2d 1174.

■ The record reveals that in the present case a group of eight named plaintiffs originally sought to represent the interests of approximately 35 class members, all of whom were readily discernible from company records. Subsequently, plaintiffs amended their complaint to add approximately 12 more members. After notification to the class members, the final class consisted of 19 members. Regarding the requisite of impracticability of joinder, plaintiffs' original and amended (by adoption) complaints alleged that "the class is so numerous that joinder is impractical." Following oral argument, the trial court certified the class, finding that "[o]ne of the basic elements of a class action is the avoidance of multiplicity of suits. The number of persons justifying a class action is dependent on many factors. In Cook County, reducing the backlog of cases is a factor to be considered. Individual suits by approximately thirty (30) employees would unnecessarily add to the backlog of cases. All the other elements necessary for a class action are properly pleaded." Subsequently, the expanded class was certified, although no express findings of fact were enunciated. Because the trial court is not required to state all findings of fact relevant to its decision, we cannot assume that those statements which appear in the record comprise the trial court's full and complete rationale. Moreover, we are not aided in this respect by the record which is void of a transcript of any of the numerous hearings held on the issue of class certification. The resulting informational gap renders it impossible for this court to review the totality of the argument presented to the trial court, which is absolutely central to a determination of abuse of discretion. It is well established that in the absence of a full and complete record, a reviewing court must presume that the trial court acted properly and defer its decision. (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042, 389 N.E.2d 182.) Accordingly, we do not find that the trial court abused its discretion and, therefore, affirm its grant of class certification.

In the alternative, defendant argues that notwithstanding the correctness of the trial court's finding that Malco's 1967 policy governed payment of severance benefits to plaintiffs, the trial court erred in entering summary judgment as to individual class members George Walter and Fred Faje on the ground that material issues of fact re-

main regarding their entitlement claims.

### a. GEORGE WALTER

The central issue regarding Walter is the impact of his refusal to transfer to an out-of-State location on his eligibility to receive severance pay benefits under the 1967 policy which states, in pertinent part:

> "C. The following employees are not eligible for termination allowance beyond what is provided for in the Vacation Pay policy provisions:
>
> * * *
>
> 4. Employees whose jobs have been eliminated and who have been offered another position within the company at a comparable salary level and do not elect to accept the offer."

In his affidavit, Walter admits that Al Menella, president of the Connector Group of Microdot, Inc., asked him if he would like to move to Pennsylvania and informed him that if he did not make the move, he would be laid off. However, Walter denies that he was ever made "a specific offer, at a specific salary for any other job, in Pennsylvania, or anywhere else," denial of which would trigger his ineligibility under the 1967 policy. In addition, Walter argues that when the 1967 policy was enacted, Malco was strictly a local business and Walter had never anticipated that it would become a national corporation with the concomitant possibility of transfer out of the State. Walter further contends that when Malco became a national corporation, the transfer eligibility provision had the effect of a forfeiture clause because of the hardship it imposed. We find this argument attenuated and legally naive. Consequently, we accord it no persuasive value.

█ In summary, because the pleadings reveal a material question of fact as to whether the circumstances set forth in the transfer eligibility provision actually occurred, we hold that the trial court erred in granting summary judgment in favor of George Walter and remand the cause for a trial on the merits as to Walter's eligibility.

### b. FRED FAJE

The central issue regarding Faje is whether his severance benefits should be computed on his weekly rate of pay at the time of termination or on his highest weekly rate of pay in the year prior to termination. The pertinent provision in the 1967 policy appears under the section entitled "Termination Allowance Computation" and states:

> "A. Employees who are eligible for this allowance will re-

ceive one (1) regular weeks pay (40 hours) for each complete year of service."

It is undisputed that, with the exception of Faje, all severance pay benefits were computed on each plaintiff's rate of pay at the time of termination.

■ Faje argues that the reduction in weekly salary from $402.92 to $288.46 six weeks prior to his termination "was intended to deny him the fruits of the contract set out in the 1967 severance pay plan," and that "[t]he action was a clear breach of Malco's duty to perform the contract in good faith." In his affidavit, dated April 23, 1982, Faje stated that in July 1975, Tom Kissinger, Malco's personnel manager, told him that he would have to take a reduction in salary in order to be kept on the payroll. In accord, the affidavit of Stanbury Pearce, vice-president and general manager of Malco, stated that as a cost-cutting measure during the period of Malco's serious financial difficulties in 1975, Malco offered the senior employees a salary reduction rather than terminate their employment. Faje claims that he accepted the salary reduction "under protest" because the only alternative was unemployment. Yet the record is void of any explanation as to how Faje manifested his alleged protest. While this court recognizes that no employee enjoys having his salary reduced, we also are aware that during times of economic distress, circumstances sometimes conspire to force corporations to institute seemingly harsh policies in an effort to avoid even harsher ones at a later date. This appears to be the situation in the present case. Contrary to Faje's allegation, we find no evidence in the record to suggest that Faje's salary reduction was an act of bad faith. To the contrary, there is evidence that Malco instituted cost-cutting measures to conserve financial sources while preserving Faje's employment. Unfortunately, those measures did not yield the necessary financial results.

Accordingly, because it has been Malco's established practice to compute severance pay benefits on the employee's salary at the time of his termination and because there is no evidence that Malco acted in bad faith when it reduced Faje's weekly salary six weeks prior to his termination, we find that the trial court erred in granting summary judgment in Faje's favor and reverse the trial court's judgment as to Faje and remand the cause for computation of Faje's benefits based upon his salary at time of termination.

For the aforementioned reasons, we affirm the judgment of the trial court as to plaintiffs' right to severance pay under the 1967 policy and as to class certification, reverse the trial court's summary

judgments as to George Walter and Fred Faje, and remand the cause for further proceedings regarding the eligibility of George Walter and the computation of benefits due Fred Faje.

Affirmed in part; reversed and remanded in part.

MEJDA, P.J., and LORENZ, J., concur.