**August ARADO, Plaintiff,**

v.

**GENERAL FIRE EXTINGUISHER CORPORATION, Defendant.**

**No. 84 C 4749.**

United States District Court,
N.D.Illinois, E.D.

Aug. 7, 1985.

---

H. Candace Gorman and Lowell B. Komie, Chicago, Ill., for plaintiff.

Seymour Cohen, Mark L. Juster, Gary Wincek and Fredric Bryan Lesser, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

August Arado ("Arado") charges General Fire Extinguisher Corporation ("General") terminated him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. In addition to that Count I cause of action (captioned "Age Discrimination Claim"), Arado's Complaint asserts two unlabeled claims (Counts II and III), each of which realleges (via incorporation by reference) all of Count I's 17 paragraphs of allegations. General now moves under Fed.R. Civ.P. ("Rule") 56 for "partial" summary judgment as to Complaint Counts II and III and portions of the prayer for relief in Count I. For the reasons stated in this memorandum opinion and order, the motion is granted in part and denied in part.

### Facts [1]

Resolution of the current motion requires only a brief treatment of the facts.

---

1. Rule 56 imposes on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact. *Korf v.*

*Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). For that purpose the court must, in viewing the evidence, draw all reasonable infer-

Arado was General's Treasurer. At the time of his termination in October 1983, he was 54 years old and had worked at General for 12½ years.

Complaint Count I ¶ 9 alleges General's President Harry Haulman ("Haulman") had announced in the summer of 1983 he was planning a "youth movement" at General because he was dissatisfied with the performance of older employees.[2] Haulman's strategy was to harass older workers into resigning by either demoting them or adding significantly to their workloads (*id.* ¶ 3). Arado asserts he was given the work of two other employees in addition to his own normal full-time duties (Arado Deposition ("Dep.") 48–50, 70).

Arado met twice with Haulman in mid-August 1983 to explain the new duties were impossibly burdensome and plead for assistance in carrying them out (Dep. 49–57). Each time Haulman refused to lighten Arado's load (Dep. 50, 56). At the first meeting Haulman told Arado to "quit, quit, quit, quit" if he could not perform all the functions (Dep. 50), and at the second meeting Haulman threatened Arado with termination if Arado did not take on the new duties within a week (Dep. 57).

In mid-September the dispute between Arado and Haulman intensified when Arado took a vacation without making arrangements for anyone to cover his duties (Dep. 75–76). Finally, on October 4 Haulman told Arado "this couldn't go on any longer" and terminated him, giving Arado his remaining vacation pay and four weeks' severance pay (Dep. 80). Haulman also asked Arado whether Arado wanted a letter of recommendation (*id.*). Arado responded affirmatively and Haulman returned 15–20 minutes later with the letter (Dep. 80–81), which read:

To Whom It May Concern:

August Arado has worked with me for the past twelve years. During that time, he has been Treasurer of the company for the past five years. Unfortunately, through cutbacks caused by present economic conditions, we have had to eliminate his position.

I would particularly recommend Arado in the Cost field, Inventory Control, and Lifo accounting. I doubt if you will find anyone to match his expertise in these fields.

### Arado's Claims

Complaint Count I charges Arado was fired because of his age, in violation of ADEA. It prays for actual, compensatory, consequential and liquidated damages as well as attorneys' fees. Count II charges General's award of only four weeks' severance pay to Arado was an "intentional and willful" violation of General's "standard practice" of awarding at least one week's pay for each year of employment. Count III charges Haulman's letter of recommendation is actually more harmful than helpful to Arado, so that Arado has not been able to use it and has suffered a "loss of his business reputation."

### General's Motion

General seeks summary judgment as to Counts II and III. It also asks for what it terms a "partial" summary judgment as to Count I's prayers for compensatory, consequential and liquidated damages.

1. *Count I*

General's motion as to Count I simply misapprehends the purpose and func-

---

ences in the light most favorable to the nonmovant—here Arado. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984). Throughout this opinion the recitals of facts adhere to those principles.

**2.** Arado's Deposition 95–97 reflects Arado learned of Haulman's alleged statement thirdhand. Such hearsay is of course not admissible

evidence as required by Rule 56(e), and under that Rule Arado may not simply rest on his pleadings. But for purposes of the present motion General has not challenged the merits of Count I's age discrimination claim. Thus, the allegations as to discrimination in the preceding and following sentences in the text serve here only to place the contested issues in context.

tions of Rule 56.[3] As this Court has often repeated (most recently in *Newman-Green, Inc. v. Alfonzo-Larrain,* 612 F.Supp. 1434, 1439 (N.D.Ill.1985)), Rules 56(a) and 56(b) simply do not permit the piecemealing of a single claim or the type of issue-narrowing sought here by General. This Court's colleague Judge Susan Getzendanner has just concurred in that analysis in *Capitol Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. 25 (N.D.Ill. 1985), explaining that despite Rule 56(a)'s reference to "all or any part" of a claim, the Rule authorizes only the granting of appealable "judgments" disposing of entire claims.[4]

As *Capitol Records* and this Court's consistent opinions teach, Rule 56(d)'s issue-narrowing provision operates only in the wake of an unsuccessful (and proper) motion under Rule 56(a) or 56(b). *Capitol Records,* 106 F.R.D. at 29; *SFM Corp. v. Sundstrand Corp.,* 102 F.R.D. 555, 558–59 (N.D.Ill.1984). Rule 56(d)'s purpose is merely "to salvage whatever constructive results have come from the judicial effort" to resolve a full-fledged summary judgment motion. 6 Pt. 2 Moore, *Moore's Federal Practice* ¶ 56.20[3.–3], at 56–1223. There is no such thing as an independent motion under Rule 56(d).

Accordingly General's Count I motion is denied. That denial is (of course) without prejudice.

## 2. *Count II*

■ Count II's common law claim[5] for severance pay fails under this Court's analysis of Illinois law in *Rynar v. Ciba-Geigy Corp.,* 560 F.Supp. 619 (N.D.Ill.1983).[6] *Rynar, id.* at 624 explained an Illinois employer is not obligated to award severance pay unless that obligation arises from the employment contract. Even a written personnel policy setting forth guidelines for severance pay is not binding on the employer unless *(id.)*:

1. a separate document constituting an express employment contract can be construed as subject to the "policies" of the employer; or

2. "the terms of the policy itself suggest that a mutuality of obligation was intended by employer and employees when the policy was given."

No written employment contract existed between Arado and General, and Arado does not claim an express oral contract *(Rynar,* 560 F.Supp. at 624) embodying a severance pay obligation. Those uncontested facts obviously preclude the first of the *Rynar*-identified possibilities.

**3.** General also failed to comply with this District Court's General Rule 12(e), which mandates that every summary judgment submission be accompanied by "a statement of the material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law," including all supporting references to evidentiary materials. Arado in turn (perhaps more understandably) did not file the responsive statement required by General Rule 12(f). Had the issues been more complex than this opinion reflects, this Court would have rejected General's motion out of hand because of its noncompliance.

**4.** In this case the applicable provision is Rule 56(b):

A party against whom a claim ... is asserted ... may ... move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

Precisely the same analysis applies to the identical "all or any part" language in the two provi-

sions, one of which (Rule 56(a)) deals with a plaintiff's motion and the other of which (Rule 56(b)) deals with a defendant's motion.

**5.** Though Arado's counsel did not caption Counts II and III (unlike Count I), each of the later counts reasserts all 17 paragraphs of Count I—all of which address ADEA issues. Hence General initially (and justifiably) assumed Counts II and III were intended as additional ADEA claims. Arado's current memorandum has explained both are pendent common law counts.

**6.** Arado's wholly inadequate discussion of law on this issue cites only *Kulins v. Malco, Inc.,* 121 Ill.App.3d 520, 76 Ill.Dec. 903, 459 N.E.2d 1038 (1st Dist.1984). *Kulins* simply did not address the issues relevant here, which were not in controversy there and hence not discussed by the court; *id.* at 524, 76 Ill.Dec. 903, 459 N.E.2d at 1042.

Nor has Arado provided any basis for finding General otherwise adopted a personnel policy that entailed a mutuality of obligation. In fact, Arado has not even *asserted* a mutually binding policy exists. Instead Complaint Count II ¶ 18 alleges (but without the necessary Rule 56(e) evidentiary support) General had a "standard practice" of awarding severance pay ranging between one week's and one month's pay for each year of employment.

But *Rynar*, 560 F.Supp. at 625 and *Carter v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 332 N.E.2d 574, 576 (5th Dist.1974), on which *Rynar* relied, make it clear a personnel policy does not take on contractual status unless at a minimum it:

　　1.　is communicated to the employees;

　　2.　is accepted by the employees; and

　　3.　places obligations on both the employer and the employees.

It is profitable to compare (or contrast) the *Rynar* and *Carter* treatment of those factors with Arado's claimed situation.

As to the first element, in each of *Rynar* and *Carter* the policy was communicated to the employees in writing. As for the second factor, the cases reached opposite results:

　　1.　In *Carter* the policy was deemed accepted by the employees because (a) the employer reviewed it with them at the time it was implemented (24 Ill. App.3d at 1058–59, 322 N.E.2d at 576) and (b) the employees continued to work after getting that explanation.

　　2.　In *Rynar* the plaintiff employee was found not to have accepted the policy as a contract because he had not been informed of or reviewed its terms until

several months after he began working. Moreover, modifications in the policy were never presented to employees for their review or approval (560 F.Supp. at 625).

Finally, both cases found the mutuality-of-obligation requirement satisfied by an employee undertaking that provided consideration for the employer's severance pay obligation in the written personnel policy. In each instance the employee was obligated to provide adequate notice to the employer before resigning. *Rynar*, 560 F.Supp. at 625; *Carter*, 24 Ill.App.3d at 1059, 322 N.E.2d at 576.

By contrast, Arado meets none of the three criteria. He has neither asserted nor offered evidence tending to show communication *or* acceptance *or* mutuality of obligation as to General's asserted severance pay policy.

As a threshold matter, the very existence of a "policy" poses a real problem. Haulman testified severance pay was a purely discretionary matter left to his sense of what was "fair" (Haulman Dep. 59–60). Arado bases his counter-assertion of a "policy" entirely on inferences from amounts actually paid to terminated employees. But even aided by the required favorable inferences, Arado has not defined the "policy" with enough precision to render that term appropriate. Indeed Arado Mem. 9 puts it in terms of severance pay varying "between one month's pay and one week's pay for each year an employee was employed with [General]."

Even if this Court assumes arguendo that formulation could be termed a "policy,"[7] the record is utterly bereft of any

---

**7.** It must be remembered *Arado* does not now seek summary judgment—an impossible prospect given the unascertainability of the amount due him under his version. Instead he resists an adverse judgment by contending *some* amount remains owing. For that purpose it could perhaps be sufficient for him to create a reasonable inference to that effect from the fact that every other terminated employee received (say) at least one week's pay for every year of employment—indeed that inference might survive as evidence of a policy that tempered Haul-

man's otherwise discretionary judgment of what was "fair." But Arado appears undaunted by the failure of the facts to fit such a "policy":

　　1.　One other employee with nearly Arado's tenure (11 years as compared with Arado's 12½ years) received just 4 weeks' severance pay, as did Arado.

　　2.　Two employees were given no severance pay at all.

Given the conclusion reached in this opinion, it becomes unnecessary to trace Arado's somewhat impenetrable efforts (Mem. 8–9, 11–12) to

hint that policy was ever communicated to or reviewed with the employees.[8] And finally there is no whisper of any evidence as to any obligation shouldered by the employees in return for General's asserted promise of severance pay. Under Illinois law the lack of such an obligation renders the policy a gratuity with no binding effect on the employer. *Sargent v. Illinois Institute of Technology,* 78 Ill.App.3d 117, 121–22, 33 Ill.Dec. 937, 397 N.E.2d 443, 446 (1st Dist.1979). In short, Arado has failed utterly to raise a factual issue as to the existence of any enforceable severance pay claim.

### 3. *Count III*

 Count III is simply not cognizable under Illinois law. Illinois does recognize a tort of injury to business reputation where oral or written statements call into question one's qualifications or competence to perform his or her work. 33A I.L.P. *Slander & Libel* § 27. But that cause of action is a form of defamation and thus requires publication of the injurious statements. *Libert v. Turzynski,* 129 Ill.App.2d 146, 150, 262 N.E.2d 741, 743 (1st Dist.1970). Arado Complaint Count III ¶ 18 admits he never used Haulman's letter, so there has been no publication.

Even apart from that fatal defect, it is quite difficult to interpret the unambiguously favorable language of the letter as being in any way defamatory. Thus Count III cannot survive summary judgment

viewed as a defamation claim. And if it purports instead to allege a different kind of tort, no such cause of action exists under Illinois law.

It may be Arado rather intended to state a contract-type claim in Count III.[9] Any such claim would have to be founded on General's obligations:

1. to provide Arado with a letter of recommendation; and

2. to write the letter in a *highly* complimentary (and not just a favorable) fashion.[10]

Arado would fare no better in the realm of contract than in the realm of tort. He provides no shred of legal or factual support for the existence of such obligations.

However Count III is viewed, it is insufficient in law. Here too General is entitled to summary judgment.

### *Conclusion*

There is no genuine issue of material fact (or indeed law) as to Counts II and III. General is entitled to a judgment as a matter of law as to those Counts. Accordingly Counts II and III are dismissed with prejudice. General's motion as to Count I is denied without prejudice.[11]

---

mold the disparate facts into a definable "policy."

**8.** Arado's inability to articulate the claimed policy even now—with the benefit of hindsight as to what severance payments were actually made—buttresses the absence of any communication about it while he was still employed.

**9.** This assumption gives Arado's lawyers more than their due. After all, it is one thing, under a notice-pleading regime, not to require a complaint to identify a theory of recovery. But the least to be expected of plaintiff's counsel in opposition to a defendant's summary judgment motion is a statement of plaintiff's predicate for his claim. All Arado Mem. 13 speaks of is "loss of business reputation"—a concept grounded strictly in tort.

**10.** Haulman's letter (quoted earlier) is claimed by Arado to damn him with faint praise by singling out for special commendation certain areas of experience and expertise, which Arado says will not help him get the kind of job he is looking for. Perhaps understandably, no case law authority is tendered to support such a claim.

**11.** General's Mem. 18–19 sought an award of attorneys' fees for bringing the current motion. As this opinion reflects, General had its own problems with fundamental Rule 56 principles. Because this Court lacks power to tax both sets of lawyers with fees (say in favor of this District Court's fund to reimburse pro bono counsel for expenses they advance), no fees will be awarded either way.