**In re SENTLE TRUCKING CORPORATION, Debtor.**

**Bankruptcy No. 84–01761.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 5, 1988.

H. Buswell Roberts, Jr., trustee.

Howard Hershman, Toledo, Ohio, for Sentle.

Donna Weaver, Toledo, Ohio, for trustee.

John J. Hunter, Toledo, Ohio, for Unsecured Creditor Committee.

Michael N. Vaporis, John Jacobson, Toledo, Ohio, for debtor.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on the Trustee's Objection to Claim # 371 of Jesse W. Sentle, Sr. This matter being primarily an issue of law, the parties have consented to the Court making its decision based on the Briefs of counsel. Briefs have been filed by the Trustee, Jesse W. Sentle, Sr., and the International Brotherhood of Teamsters, Local No. 20. The Court has reviewed the Briefs, and the entire record in this case. Based upon that review and for the following reasons, the Court finds

that the Trustee's Objection should be Overruled.

### FACTS

The facts in this case, with one minor exception, do not appear to be in dispute. On October 16, 1965, Jesse W. Sentle, Sr. (hereinafter "Mr. Sentle, Sr.") signed a contract with Sentle Trucking Corporation captioned "Deferred Compensation Agreement." At the time the agreement was signed, Mr. Sentle, Sr. was president and majority stockholder of Sentle Trucking Corporation.

On February 5, 1986, this case was converted to a proceeding under Chapter 7 of the Bankruptcy Code. Mr. Sentle, Sr.'s employment by the Debtor was terminated by the conversion to Chapter 7.

The Deferred Compensation Agreement, states that Mr. Sentle, Sr. will be paid Nine Hundred Ninety-four Dollars and Eighty-three Cents ($994.83) per month for Ten (10) years commencing from the date of termination of employment. *See*, Appendix I. Based upon the provisions set forth in the Deferred Compensation Agreement, Mr. Sentle, Sr. has filed a proof of claim in the amount of One Hundred Twenty Thousand Dollars ($120,000.00), apparently representing the total amount of the payments which were to be paid over Ten (10) years. No information has been provided to the Court concerning the drafting of the contract.

The Trustee has set forth several objections to Mr. Sentle, Sr.'s claim. First, the Trustee asserts that Section VI prevents vesting of the employee's rights until an actual payment is made. The Trustee also argues that Mr. Sentle, Sr. has forfeited his right to payment under Section IV of the agreement because he allowed the use of the Sentle name by J. Sentle, Inc., a corporation which engaged in the trucking business. Finally, the Trustee contends that the Deferred Compensation Agreement was an executory contract which was automatically rejected under 11 U.S.C. § 365(d)(1).

### LAW

#### A. The "Vesting" of a Right to Payment

First, the Court will consider the Trustee's objections based upon alleged violations of the Deferred Compensation Agreement. In deciding whether Mr. Sentle, Sr. has complied with the provisions of the contract cited by the Trustee, the Court should look to state law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Ohio Supreme Court has stated, "It is well-settled that contracts must be given a just and reasonable construction in order to carry out the presumed intent of the parties." *E.S. Preston Assoc., Inc. v. Preston*, 24 Ohio St.3d 7, 9, 492 N.E.2d 441, 444 (Ohio 1986).

Initially, the Trustee asserts that the terms of the Deferred Compensation Agreement do not give Mr. Sentle, Sr. a present interest, or right to payment under the contract. The Trustee relies on the following language found in Section VI of the Deferred Compensation Agreement:

> No right or title to any payment prescribed hereunder shall vest in Employee or in event of Employee's death, in his personal representatives or designated beneficiary or beneficiaries, until the actual payment thereof is made to such person by the Company in accordance with the provisions hereof ...

In isolation, it could be argued that this language prevents Mr. Sentle, Sr. from asserting a claim based upon the Agreement. However, the language which follows the opening sentence provides:

> None of them shall have the right or power to transfer, assign, anticipate or encumber his interest in such payments prior to the actual receipt thereof by him, nor shall the same be liable for any debt, contract or engagement of any of them. None of them shall be permitted to appoint any agent or attorney-in-fact to receive or collect such payments unless permission to do so shall be specifically granted by the Company in writing.

When the first sentence is viewed within the context of Section VI, it is evident that the parties were attempting, albeit some-

what crudely, to craft a spendthrift provision preventing creditors from reaching the unpaid balance of Mr. Sentle, Sr.'s deferred compensation.

Another factor, which weighs in favor of holding that Mr. Sentle, Sr.'s right to payment is not "unvested", is Ohio case law discussing "deferred compensation". The Ohio Court of Appeals has stated:

Severance pay is an *earned* benefit, one for which the employees work as much (and as hard) as they work for any other benefit or item of compensation. *Kulins v. Malco, A Microdot Co., Inc.* (1984), 121 Ill.App.3d 520 [76 Ill.Dec. 903, 908–909], 459 N.E.2d 1038, 1043–1044. That being the case, it must then be realized that, *as deferred compensation,* severance pay *accrues* while it is being earned during the course of the employment relationship. See *Johnson v. Allied Stores Corp., supra,* [106 Idaho 363, 679 P.2d 640], at 644 [1984]. Hence, once earned through their continued work, the employees' right to receive severance pay is, in a sense, *"vested".*

*Bolling v. Clevepak Corp.,* 20 Ohio App.3d 113, 121, 484 N.E.2d 1367, 1375 (Ohio Ct. App.1984) (emphasis added).

This passage appears to indicate, at least in *dicta,* that deferred compensation accrues as it is earned, and that "vesting" may be a rather slippery term in these types of agreements. Thus, a nontechnical interpretation, based upon the intent of the parties appears to be warranted in this case. Accordingly, the Court finds that Section VI was included to provide Mr. Sentle, Sr. with protection from any future creditors by creating a "spendthrift" provision. Accordingly, the clause cited by the Trustee does not prevent Mr. Sentle, Sr. from asserting a claim based upon the contract.

## B. *Breach of Contract*

■ The Trustee has also objected to Mr. Sentle, Sr.'s claim based upon his alleged violation of Section IV, which provides:

Upon the occurrence of any of the events stated below in this Section, the employee shall forfeit all rights in and to any and all payments which part for such forfeiture would or might have become payable thereafter:

1. in the event that the employee permits the use of his name in any business which is a competitor of the company.

The Trustee contends that Mr. Sentle, Sr. allowed the use of the Sentle name by "J. Sentle, Inc.", a corporation which engaged in trucking. It should be noted that Mr. Sentle, Sr. has a son who is also named Jesse Sentle. It is unclear whether J. Sentle, Inc. is named after the father or the son. The Trustee contends that it is immaterial, Jessie Sentle, Sr. having *permitted* the use of his name through his inaction. Thus, it is argued, one of the forbidden conditions was violated, triggering the forfeiture of any monies that would have otherwise been payable under the agreement.

There are several problems with the Trustee's position. First, no evidence has been presented showing that J. Sentle, Inc. was a competitor of Sentle Trucking Corporation. It appears, instead, that the two companies worked together in some manner. It should also be remembered that the Trustee is advocating the application of a forfeiture provision. Ohio law does not favor forfeitures. If the meaning of a forfeiture provision is doubtful, preference should be given, all other considerations being equal, to that construction which will prevent a forfeiture. *See, Insurance Co. v. Bonner,* 36 Ohio St. 51, 63 (Ohio 1880). As the Sixth Circuit Court of Appeals stated in reviewing an Ohio decision:

[C]ourts will strictly construe contractual provisions which authorize the forfeiture of important rights almost earned by the rendering of substantial service. Unless the language of the contract is so clear as to permit no other reasonable interpretation, such provisions will be construed to prevent arbitrary action in reliance on them.

*Lemmon v. Cedar Point, Incorporated,* 406 F.2d 94, 97 (6th Cir.1969).

Accordingly, there being no evidence that J. Sentle, Inc. was a competitor of Sentle Trucking Corporation, and Jesse

Sentle, Jr. having the same name, the Court finds that the parties did not contemplate a forfeiture of deferred compensation on the facts presented.

### C. Rejection of "Executory Contract"

■ Finally, the Court will consider the issue of whether or not the Deferred Compensation Agreement is an executory contract which was automatically rejected under § 365(d)(1). The characterization of a contract as "executory" within the meaning of the Bankruptcy Code is a question of federal law. *In re Wegner*, 839 F.2d 533, 536 (9th Cir.1988). However, the legal consequences of the terms of the contract are determined by state law under the *Erie* doctrine. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *and cf., Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

The definition of the term "executory contract" for federal Bankruptcy Code purposes, has been somewhat elusive. The historical definition, that a contract is "either executory or it is fully performed" has generally been rejected as too broad for use in bankruptcy proceedings. The search for an alternative definition has not resulted in the courts reaching a firm consensus. "Much of the confusion surrounding the executory contract concept in bankruptcy has been caused by attempted definitions of what Congress has steadfastly refused to define." *In re Norquist*, 43 B.R. 224, 225 (Bankr.E.D.Wash.1984). An extensive discussion of controlling authorities in the Sixth Circuit can be found in *In re Structurlite Plastics Corp.*, 86 B.R. 922, 925–928 (Bankr.S.D.Ohio 1988).

There are several different definitions, tests, and aphorisms, for the term "executory contract". There is the definition put forward by Professor Vern Countryman: "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Con-*

*tracts in Bankruptcy*, 57 Minn.L.Rev. 439, 460 (1974); *In re Fashion Two Twenty, Inc.*, 16 B.R. 784, 786 (Bankr.N.D.Ohio 1982).

The Supreme Court commented on the term in *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984):

The Bankruptcy Code furnishes no express definition of an executory contract, see 11 U.S.C. § 365(a), but the legislative history to § 365(a) indicates that Congress intended the term to mean a contract "on which performance is due to some extent on both sides." H.R.Rep. No. 95–595, p. 347 (1977), see S.Rep. No. 95–989, p. 58 (1977).

465 U.S. at 522 n. 6, 104 S.Ct. at 1194 n. 6, 79 L.Ed.2d at 493 n. 6.

The Sixth Circuit has addressed the executory contract question in two major cases. In *Becknell & Crace*, the Court of Appeals quoted the following portion of its decision in *In re Jolly:*

The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.

. . . .

*Thus, executory contracts involve obligations which continue into the future.* S.Rep. No. 94–458, 94th Congress, 1st Sess. (1975). *They include leases, employment contracts and agreements to buy or sell in the future.* Generally, they are agreements which include an obligation for the debtor to do something in the future. *In re Jolly*, 574 F.2d 349, 350–51 (6th Cir.) (emphasis added), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978).

*In re Becknell & Crace Coal Co., Inc.*, 761 F.2d 319, 322 (6th Cir.1985), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

In addition to the above definitions and comments, there is a widely recognized exception in cases where the only obligation which remains to be performed by a party to an agreement is the payment of money. *See, In re Structurlite Plastics Corp.*, 86 B.R. 922, 927 (Bankr.N.D.Ohio 1988) (cases cited). This exception appears to be almost independent of the various definitions. Instead, it is based upon historical and practical considerations.

The question in the present case is whether or not the Deferred Compensation Agreement fits under the exception for agreements where the only obligation which remains is the payment of money. The Trustee notes that Mr. Sentle, Sr. has certain continuing duties under the contract. There are two provisions which form the foundation of the Trustee's argument. Those clauses state:

## SECTION IV.

Upon the occurrence of any of the events stated below in this Section, the employee shall forfeit all rights in and to any and all payments which part for such forfeiture would or might have become payable thereafter:

1. in the event that the employee permits the use of his name in any business which is a competitor of the company.

2. refusal of employee at any time after retirement under the provisions of Section I or Section II hereof, and while he is physically and mentally able to do so to serve upon request as a consultant to the company, such consulting to be for such fees as the company in it sole discretion may stipulate.

The Court has previously discussed the breach of contract arguments which were based on the first clause, which prohibits Mr. Sentle, Sr. from allowing a competitor to use his name. In addressing the Trustee's contention that the Deferred Compensation Agreement is an executory contract, the Court must look at the same clause to determine if it is an "obligation which continues into the future." Problems with the Trustee's position arise from the fact that the Debtor is no longer in business. It is difficult to understand how there can be a "competitor" when there is no company against which anyone can compete.

The second clause presents problems of a similar nature. During good health, Mr. Sentle, Sr. cannot refuse to act as a consultant to Sentle Trucking Company. Again, the Company being out of business, Mr. Sentle, Sr. will never be called upon to perform such services. Under the facts in this case, can these future obligations support the finding that the Deferred Compensation Agreement is an executory contract under the Bankruptcy Code?

The Trustee cites *In re Smith Jones, Inc.* for the proposition that the mere fact that an obligation is contingent does not prevent a contract from being executory under the Bankruptcy Code. *See, In re Smith Jones, Inc.*, 26 B.R. 289, 292 (Bankr. D.Minn.1982). Therefore, the Trustee argues, these contingent obligations should support a finding that the Deferred Compensation Agreement is an executory contract.

The Court recognizes the correctness of the legal principle enunciated in the *Smith Jones* decision. However, it appears that the principle is not applicable to the facts in the case at bar.

The decision in *In re Smith Jones, Inc.*, involved warranty claims which were contingent. The debtor was obligated to supply replacement parts as failures occurred. This obligation, while contingent, could conceivably occur. In contrast, Mr. Sentle, Sr's duties are really empty shells. They are not merely contingent, they have essentially been extinguished by the conversion of the case to a proceeding under Chapter 7. Moreover, under 11 U.S.C. § 365(d)(1), the automatic rejection of executory contracts occurs sixty (60) days *after* the conversion to Chapter 7. Thus, the corporation was, in reality, out of business at the time of the putative rejection. Consequently, all that remained was the Debtor's duty to make payments under the Agreement, which does fall within the various definitions of "executory contract". *See, Lubrizol Enterprises, supra*, 756 F.2d at 1046;

*In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr.N.D.Tex.1987).

The Trustee's argument also appears to be contrary to the spirit of the decision in *In re Jolly*, 574 F.2d 349 (6th Cir.1978). The *Jolly* decision articulates what is often called the "functional approach", which directs the Court to look first at the results which would obtain if the contract were held to be executory. This approach seems to be at odds with the Trustee's contention that formal conditions, which cannot occur, should govern the disposition of this issue. The *Jolly* court stated that although some definitions, such as Professor Countryman's, were helpful, they did not always resolve the executory contract problem. *Id.* at 351. Thus, the Sixth Circuit appears to favor an examination of the realities of the situation, rather than reliance on an overly formalistic approach.

The Trustee has not indicated what objectives he hopes to accomplish through rejection. It is unclear that rejection of the Deferred Compensation Agreement would provide any great benefit to the estate. Under § 365(g), rejection would constitute a breach of the contract, giving rise to damages. It might be argued that rejection would change the character of Mr. Sentle, Sr.'s claim to one for damages, rather than deferred compensation. However, the benefit to the estate from such a change in priority status would be small when viewed in the light of the pending Complaint for Equitable Subordination of Mr. Sentle, Sr.'s entire claim.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Trustee's Objection to Claim # 371 of Jesse Sentle, Sr. be, and is hereby, Overruled.

It is FURTHER ORDERED that the issue of the priority of Jesse Sentle, Sr.'s claim pursuant to § 507(a)(3) and § 507(a)(1) will be considered at the time the Court hears the Trustee's Complaint for Equitable Subordination.

## APPENDIX I

## DEFERRED COMPENSATION AGREEMENT

This Agreement made and entered into this 16th day of October, 1965 by and between Sentle Trucking Corporation, a corporation duly organized and existing under the laws of the State of Ohio, with its office and principal place of business located in the City of Toledo, Lucas County, Ohio herein referred to as "Company" and Jesse W. Sentle, Sr. of Lucas County, State of Ohio, hereinafter referred to as "Employee". [sic]

WITNESSETH:

In consideration of the mutual promises and undertakings hereinafter set forth, the parties hereto agree as follows:

### SECTION I.

If the employee's employment by the company is terminated at any time on or after October 16, 1983, whether by action of the company or Employee, the company will pay to the Employee Nine Hundred Ninety–Four Dollars and Eighty–Three Cents ($994.83) per month for ten (10) years commencing from the date of such termination of employment. If Employee dies after such termination of employment, but before receiving one hundred twenty (120) monthly payments, the company will continue the payments to Alma Rose Sentle or to such other person as may have been designated by Employee in writing, to the company or in Employee's Will, or if there has been no such designation to the Executors or Administrators of the Employee's estate until the total of one hundred twenty (120) monthly payments of Nine Hundred Ninety–Four Dollars and Eighty–Three Cents ($994.83) each have been paid.

### SECTION II.

If Employee's employment by the company is terminated after 1965 but before age sixty-five (65), whether by action of the company or Employee the company will commence monthly payments to Employee

within thirty (30) days after Employee's termination of employment in the appropriate monthly sum in Table A follows and continues such payment for one hundred twenty (120) months:

### TABLE A

| Year of Termination | Monthly Sum Payable |
|---|---|
| 1 | $ 29.38 |
| 2 | 53.13 |
| 3 | 97.92 |
| 4 | 144.79 |
| 5 | 192.72 |
| 6 | 241.68 |
| 7 | 292.73 |
| 8 | 345.85 |
| 9 | 400.02 |
| 10 | 457.21 |
| 11 | 514.61 |
| 12 | 576.07 |
| 13 | 638.57 |
| 14 | 704.20 |
| 15 | 771.91 |
| 16 | 842.75 |
| 17 | 916.71 |
| 18 | ·994.83 |

In the event of Employee's death prior to the payment of one hundred twenty (120) monthly sums, the remaining payments shall be continued to Alma Rose Sentle or to such person as may have been designated by Employee in writing to the company, or in Employee's Will, or if there has been no such designation, to the Executors or Administrators of the Employee's estate.

### SECTION III.

If Employee dies prior to the termination of his employment and before the due date of any payments provided for in Section I., the company will pay to Alma Rose Sentle or to such person as may have been designated by the Employee in writing to the company or in Employee's Will, if there has been no such designation to the Executors or Administrators of the Employee's estate in one hundred twenty (120) monthly installments the monthly sum set forth in Table B.

### Table B

| Calendar Year of Death | Monthly Sum |
|---|---|
| 1966 | $1,041.71 |
| 1967 | 1,043.34 |
| 1968 | 1,048.79 |
| 1969 | $1,055.10 |
| 1970 | 1,062.32 |
| 1971 | 1,070.45 |
| 1972 | 1,079.54 |
| 1973 | 1,089.58 |
| 1974 | 1,100.60 |
| 1975 | 1,112.62 |
| 1976 | 1,125.68 |
| 1977 | 1,139.85 |
| 1978 | 1,155.19 |
| 1979 | 1,171.72 |
| 1980 | 1,189.53 |
| 1981 | 1,208.71 |
| 1982 | 1,229.30 |
| 1983 | 1,251.42 |

### SECTION IV.

Upon the occurrence of any of the events stated below in this Section, the employee shall forfeit all rights in and to any and all payments which part for such forfeiture would or might have become payable thereafter:

1. in the event that the employee permits the use of his name in any business which is a competitor of the company.

2. refusal of employee at any time after retirement under the provisions of Section I or Section II hereof, and while hs is physically and mentally able to do so to serve upon request as a consultant to the company, such consulting to be for such fees as the company in it sole discretion may stipulate.

### SECTION V.

Temporary leave of absence with the soncent of the Company shall not constitute termination of Employee's employment.

### SECTION VI.

No right or title to any payment prescribed hereunder shall vest in Employee or in event of Employee's death, in his personal representatives or designated beneficary or beneficiaries, until the actual payment thereof is made to such person by the Company in accordance with the provisions hereof. None of them shall have the right or power to transfer, assign, anticipate or encumber his interest in such payments prior to the actual receipt thereof by him, nor shall the same be liable for any debt, contract or engagement of any of

them. None of them shall be permitted to appoint any agent or attorney-in-fact to receive or collect such payments unless permission to do so shall be specifically granted by the Company in writing. The Company, in the absence of such written permission, shall not in any manner recognize such appointment, transfer, assignment or encumbrance. If any of them shall attempt to transfer, assign, or encumber his share of the payments or any part thereof prior to the payment thereof to him, or if any transfer or seizure thereof is attempted to be made or brought about through the operation of any bankruptcy or insolvency law or other legal proceeding, the right or interest of the person taking such action or concerned therein and who would but for this provision be entitled to receive said payments, shall forthwith and ipso facto terminate, all rights and interest bestowed upon any such person being hereby on the happening of any such event expressly revoked, and the Company being expressly relieved of any obligation therefor, and the Company shall hold, apply or pay the same or any part thereof to or for the benefit of Employee, his estate, his designated beneficiary or beneficiaries or to or for the benefit of Employee's spouse, children or other dependents of any of them, in such manner and in such proportions as Company may deem proper.

### SECTION VII.

Nothing in this Agreement shall be construed to give the Employee the right to remain an employee of the Company and Company reserves the right to discharge the Employee to the same extent as if this Agreement did not exist, provided that such discharge shall not affect the obligation of the Company to make payments under Section II. hereof.

### SECTION VIII.

The contract as written expresses the entire agreement between the parties with respect to the matters to which it pertains, and that said agreement can be terminated, modified or amended only by a writing signed by both parties thereto.

Executed in duplicate the day and year first above written.

SENTLE TRUCKING CORPORATION
By /s/ JESSE W. SENTLE
President
By /s/ Raymond L. Spencer
Secretary
/s/ Jesse W. Sentle
Employee