## O. M. White, Appellant, v. Mandel Brothers, Appellee.

### Gen. No. 32,206.

314

Opinion filed April 3, 1928. Rehearing denied April 17, 1928.

KIRKLAND, PATTERSON & FLEMING, for appellant; CHARLES F. RATHBUN and ALLAN W. COOK, of counsel.

ALTHEIMER & MAYER, for appellee; A. B. MANION, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Plaintiff sued defendant to recover salary and commissions claimed for the year 1923, under a written contract for his employment as buyer and manager of defendant's furniture department. His claim was for over $12,000. A trial was had without a jury. At the close of plaintiff's case defendant's motion for a finding was allowed, and a judgment was entered thereon for plaintiff for $192.28, an amount admitted to be due on his semi-monthly salary from December 15 to December 21, 1923, when he was discharged. This appeal followed.

The contract was for a term of three years from January 1, 1922, to December 31, 1924, subject, however, to termination December 31, 1923, on 60 days' notice by either party. Such notice was given by plaintiff. Ten days before the contract terminated he received his discharge for, among other reasons, insubordination and abusive language.

Aside from the testimony of an accountant as to the state of his claim plaintiff was the only witness.

Plaintiff had been in defendant's employ under different contracts since 1917. Under the contract in question entered into November 7, 1921, he took charge as buyer and manager of defendant's furniture department. In the performance of his duties he purchased

the stock, arranged for its sale, fixed retail prices, made the reductions thereon in the course of the year or at inventory periods, and had been unrestricted in the exercise of the duty of making reductions from the year 1917. The reductions he made kept in view his duty to maintain a gross profit of 33 1/3 per cent on net retail sales for the firm, and during the year 1923 reductions were made by him in the usual course when necessary for the purpose of selling, he going over the stock for further reductions in December, 1923, preparatory to the inventory at the end of the year. Apparently contrary to former practice of the firm his superiors on December 20, 1923, sought to make further reduction of prices that plaintiff thought was uncalled for and unjustifiable and that would have a tendency to deprive him of commissions he had earned during the year. This resulted in an interview with Robert Mandel, who had general supervision of the department, in which plaintiff said to him: ''It is a dirty, crooked trick and you are not going to get away with it if I can help it,'' and suggested consulting a lawyer. On being told by Mandel to get out of the office plaintiff pointed to Kaufman, Mandel's assistant, and said: ''That dirty little kike is the instigator of this.'' To Frank Mandel, the vice president of defendant, who was just outside the room as he was leaving, he said: ''What do you think, these crooks are trying to beat me out of my bonus''; and as he left he said to certain employees: ''If you want to be sure of getting what is coming to you, you better get it in your salaries after this because they are trying to beat me out of what I have got coming to me.''

We are not disposed to differ with the trial court's finding that the use of such language to his superiors justified his discharge, even though, as contended by appellant, he was goaded and unjustly provoked to such conduct and language. We cannot but be impressed, however, in the absence of any testimony for

defendant, that the course resorted to by defendant under the circumstances and at that particular time in making further reductions out of all proportion to what had been made in previous years and to such an extent as would, on the basis of the inventory about to be taken, deprive plaintiff of his commissions for the year that would otherwise have amounted to several thousand dollars, furnishes some mitigation for plaintiff's conduct and some support for his suspicion that the reductions were to be made for the purpose of depriving him of justly earned commissions.

But regardless of the amount of the commissions to which plaintiff may be legally entitled, which would appear on any theory to be at least nearly $4,000, the controlling question is whether defendant by reason of such discharge was entitled to forfeit plaintiff's earned commissions up to the date of such discharge which, but for such reductions, amounted to approximately $12,000.

Under the terms of the contract plaintiff was to be paid a salary of $12,000 a year in equal semi-monthly instalments, and in addition thereto an amount equal to $1\frac{1}{8}$ per cent of all net retail sales in his department in excess of $650,000, and one per cent of all net contract sales in excess of $150,000, said excess to become due and payable within 30 days after the annual inventory was completed. This clause as to commissions was to be inoperative and void unless the gross profits of such department during the year should be 33 1/3 per cent of the net retail sales, and at least 15 per cent of the net contract sales, and the contract provided further ''that if the employee shall leave the employ of the company before the term of his employment has terminated or is discharged for cause from the employ of the company before the term of this contract has terminated, then and in that event any commissions or bonus that might have accrued after January

1st preceding shall be and are hereby waived and released and are to be retained by the company.''

The testimony disclosed that but for unusual reductions of prices made by defendant after plaintiff's discharge, plaintiff would have been entitled at the end of the year to a commission of $8,278.52 on the retail sales, and $3,971.81 on the net contract sales, and to a slightly less amount if computed to the date of his discharge, and approximately the latter sum in any event. The question arises, therefore, whether a proper construction of the contract justifies the forfeiture of plaintiff's commissions for the year, regardless of their amount, and the retention of the same by defendant; in other words, whether the quoted provision for such retention was intended as one for liquidated damages or for a penalty.

In the absence of any ambiguity we must look to the contract itself to determine the purpose of the provision and the intention of the parties.

It is clearly inferable from the large renumeration provided for and the long term of the contract that defendant placed a high estimate on the value of plaintiff's services; that it sought to insure his remaining in its employ for at least two years and contemplated damages that might ensue in case he left its employ, whether voluntarily or involuntarily, before the expiration of that time. With these matters in mind by the parties to the contract we may readily perceive that the primary purpose of the provision in question was to afford defendant compensation for damages in case of loss of plaintiff's services by breach of contract in quitting its employ or by conditions that warranted his discharge. What other reasonable purpose would such a clause subserve? If intended merely to mete out punishment it is clearly in the nature of a penalty, and if intended as compensation for damages it would appear to be equally so, for the closer to the end of the term of the contract plaintiff might leave

or be discharged the less would be the damages sustained by defendant from loss of his services, but the greater would be the amount of the forfeiture. Such disproportion is inconsistent with a purpose to agree upon liquidated damages commensurate with probable loss. In other words, had plaintiff left at the beginning of the year 1923, the commissions earned would have been comparatively small to what they were at the end of the year to compensate defendant for the loss of his services for the rest of the year. On the other hand, discharged, as he was, only ten days before the contract was to terminate, defendant's loss would be manifestly slight and plaintiff's commissions greatly in excess of any loss which defendant could, in all reasonable probability, have sustained, which, however, if the pure letter of the agreement be followed, he would be required to forfeit. The utter disproportion of the fund that might thus be retained to any reasonable loss that might be sustained indicates that the provision was in the nature of a penalty rather than an agreement for liquidated damages. Taken in connection with the fact that the commissions were not to be paid or ascertained until after the end of the year the provision seemingly contemplates defendant's right to retain them against any damages it would be entitled to under the contract by way of set-off for loss of plaintiff's services. While no damages were either proved or pleaded the theory of the court's finding and judgment is based wholly on the right to forfeiture of the commissions on the ground of plaintiff's discharge for cause, and hence in effect a construction of the clause as one providing for liquidated damages. In this conclusion we cannot concur.

That the attitude of the courts is unfavorable to forfeitures is well known, and where it is doubtful whether a provision should be deemed one for a penalty or for liquidated damages, the courts incline to regard it as for a penalty. (*Iroquois Furnace Co. v.*

*Wilkin Mfg. Co.,* 181 Ill. 582; *Advance Amusement Co. v. Franke,* 268 Ill. 579; 17 C. J. 1937.) In the *Franke* case, *supra,* the court said:

"While the intention of the parties on this question must be taken into consideration, the language of the contract is not conclusive. The courts of this State, as well as in other jurisdictions, lean towards a construction which excludes the idea of liquidated damages and permits the parties to recover only damages actually sustained."

In that case the court adhered to the principle that a stipulated sum will not be allowed as liquidated damages unless it may be fairly allowed as compensation for the breach, and it said that courts will look to see the nature and purpose of fixing the amount of damages to be paid, and if it appears to have been inserted to secure the prompt performance of the agreement it will be treated as a penalty and no more than actual damages proved can be recovered.

We think, too, it would be unconscionable to enforce a provision that would require the forfeiture of a large sum earned as salary or commissions merely for the loss of an employee's personal services like those of the plaintiff. We fail to see any valid distinction in principle between the nature of the contract in question and that of a contract of hiring for wages. In the latter class of cases, where the principle of compensation has been clearly departed from requiring the servant to forfeit unpaid wages as liquidated damages for breach of his contract, courts have not enforced the forfeiture. (Vol. 1, Sedgwick on Damages [9th Ed.], ch. 17, ¶¶ 391, 393, 407; *Richardson v. Woehler,* 26 Mich. 90; *Schmieder v. Kingsley,* 6 Misc. 107, 26 N. Y. Supp. 31; *Schrimpf v. Tennessee Mfg. Co.,* 86 Tenn. 219, 6 S. W. 131.) In the cases cited the court held the forfeiture provision was in the nature of a penalty and not liquidated damages. In the *Schmieder* case, the court said, as have our courts (see *Franke* case, *supra,*

268 Ill. 579) : ''The language used is immaterial, if the intention to provide a penalty is apparent.'' And as said in the *Schrimpf* case, *supra,* citing from Sutherland on Damages, ''the folly of one making a wild and reckless stipulation will not justify oppression in the other.'' In the *Schmieder* case it was held that a provision in the agreement that the employee should suffer the loss of all moneys due him at the time of his departure from employment without reference to the extent of the injury, immediate or remote, which defendants might suffer from plaintiff's conduct, could be regarded only as a penalty. The court added: ''It might be, therefore, that the amount owing to plaintiff from defendants is outrageously in excess of any loss which the latter have sustained, or in all reasonable probability could sustain; and still, if the letter of the agreement was permitted to be controlling, plaintiff would be without redress. Assuredly, such a provision is intended to mete out punishment, rather than to afford compensation.'' We think the quoted language is particularly appropriate to the case at bar.

If we follow the letter of the agreement here plaintiff would forfeit over $12,000, a sum seemingly disproportionate to any probable damages defendant may have sustained from the loss of his services for a period of ten days. Neither in reason nor in conscience can it be said that the parties contemplated or intended any such result. Suppose plaintiff had been discharged on the last day of the year, would it be deemed otherwise than unreasonable and oppressive exaction to require the forfeiture of his entire commission earnings for the whole year? Can it be deemed any less so that his contract had only ten more days to run? As said in Sedgwick on Damages, Vol. 1, ¶ 406 (9th Ed.), when the parties ''undertake to stipulate, not for compensation, but for a sum out of all proportion to the measure of liability which the law regards as compensatory, then the law will not allow the agreement to stand.''

It can hardly be doubted that had the agreement in question fixed the sum of $12,000 or $4,000 as liquidated damages for the loss of ten days' services it would be regarded in the nature of a penalty and considering the character of the services a forfeiture thereof would not be permitted to stand.

Conceding then that the court was justified in holding that plaintiff was properly discharged for cause, we think it erred in holding that plaintiff was not entitled to recovery for anything in excess of the unpaid balance of his salary. However, had there not been a finding at the close of plaintiff's evidence defendant would have been privileged to offer testimony as to the amount of commissions due, and, had it put in a counterclaim, to make proof of damages sustained for loss of plaintiff's services. If on a retrial it is found that plaintiff is entitled to commissions, and also that there was proper ground for his discharge, we think the amount of his commissions should be computed to the date of his discharge.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

GRIDLEY and SCANLAN, JJ., concur.