ORVILLE WILSON *et al.*, Plaintiffs-Appellants, *v.* LaSALLE MANUFAC-
TURING AND MACHINE COMPANY *et al.*, Defendants-Appellees.

Third District   No. 77-72

Opinion filed March 22, 1978.

John Olivero and William LaSorella, both of Peru, for appellants.

Herbolsheimer, Lannon and Henson, P. C., of LaSalle (John S. Duncan, of counsel), for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Plaintiffs Orville Wilson and Charles Siroin appeal from an order of the Circuit Court of La Salle County granting a motion to dismiss a complaint filed by plaintiffs to recover what were asserted as bonus payments allegedly due the plaintiffs, as employees of defendants. The amended complaint of plaintiffs was dismissed by the trial court with prejudice.
On appeal to this court, plaintiffs contend that the trial court erred in dismissing the complaint (1) on the contention that the provision that

"bonus payments would be made only to employees employed as of the date of payment" and the further provision that "persons no longer employed will not receive bonus payments and their absence will allow division of the remaining bonus pool among the existing employees" is void as a penalty and is not enforceable and (2) on the contention that discharge of the plaintiffs-employees for the purpose of depriving them of their share of the bonus pool was fraudulent and, also, that discharge of the employees made impossible the performance by the employees of the condition precedent to qualify for payment of a share of the profits described as a bonus.

Plaintiffs' amended complaint alleged that plaintiffs Wilson and Siroin were employed by defendants under oral employment contracts beginning in April 1973 and in April 1972, respectively. The complaint further alleged that in March 1974 defendants instituted a bonus plan for their employees. That bonus plan, a copy of which was attached to the complaint, stated that:

> "It will be the compensation policy of * * * [defendants] to pay average competitive compensation for each class of employee, and not to pay on the high side, but to offer an attractive bonus compensation to all employees to the extent that their good efforts result in profitability above a minimal acceptable [sic] level to the owners."

The plan provided for the creation of a bonus pool dependent in amount upon the profitability of defendants' business, and for distribution of the bonus pool to defendants' employees based upon the production of each employee's gross earnings as related to the gross earnings of all employees receiving bonus payments in such classification. By the terms of the bonus plan, the calculation of the profitability of defendants' business and calculation of the amount of the bonus pool were to be made monthly. The plan generally provided that payment of a given month's bonus would be made one-third by the 15th of the month following, and one-third by the following December 15. The remaining payment for a given year would be made by March 15 of the following year, after final calculation of the profitability of defendants' business for the given year.

While all of the defendants' employees were included in the bonus plan, the plan specified that bonus payments were to be made only to persons currently employed by defendants on the date of payment, and that all of the bonus pool would be distributed to defendants' existing employees on that date of payment. The amended complaint alleged that plaintiffs Wilson's and Siroin's employments were terminated by defendants on January 18, 1975, and on October 22, 1974, respectively, for the purpose of depriving plaintiffs of their share of the bonus pool. Plaintiffs' complaint sought recovery from defendants of the so-called

bonus amounts calculated for the months prior to the terminations of plaintiffs' employments, but which amounts were not scheduled to be paid (under the specific terms of the bonus plan) until after the dates of plaintiffs' terminations. As we have noted, the trial court granted the motion to dismiss the amended complaint with prejudice under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45).

As noted, the plaintiffs first contend that the provisions of the bonus plan, which specified that bonus payments would be made only to persons employed on the date of payment, are void and unenforceable as a penalty, and cannot act to deprive plaintiffs of bonus amounts calculated for months during which plaintiffs were employed by defendants. As we have noted, the plan specifies particularly that bonus payments are to be made only to persons actually in defendants' employ on the date of payment. Plaintiffs contend that this results in an improper forfeiture of bonus payments. The specific plan, which is a noncontributory plan insofar as employees are concerned, simply provides that "bonus payments will be made only to employees employed as of the date of payment" and states that "persons no longer employed will not receive bonus payments and their absence will allow division of the remaining bonus pool among existing employees."

The employer contends that those provisions are in form and substance, qualifications and restrictions upon participating in the plan which must be satisfied by the employees before they are entitled to payment. Thus, the employer contends that the provisions as specified are conditions precedent to participation in distributions from the bonus pool. The trial court agreed with defendants' contentions.

■■ ■ General principles which govern interpretation and construction of contracts and agreements are well established. When language of the agreement is unambiguous and clear, there is no need to look beyond the instrument to determine the intention of the parties (*Sigma Delta Tau Society v. Alongi* (2d Dist. 1976), 44 Ill. App. 3d 650, 652, 358 N.E.2d 906) and, as stated in *Speasl v. National Bank* (3d Dist. 1962), 37 Ill. App. 2d 384, 387, 186 N.E.2d 84, 86:

> "It is elementary that the agreement of the parties governs their rights thereunder unless the undertaking be contrary to some rule of positive law or offensive to public policy."

It is not within the province of a court to make a new agreement for the parties or, by construction, to write a new agreement into which the parties have not entered (*Sigma Delta Tau Society v. Alongi* (2d Dist. 1976), 44 Ill. App. 3d 650, 358 N.E.2d 906). As was stated in *Whaley v. American National Insurance Co.* (4th Dist. 1975), 30 Ill. App. 3d 32, 34, 331 N.E.2d 571:

> "the courts cannot make a new contract by supplying provisions,

nor give plain and unambiguous language a distorted construction."

The entire bonus plan is also devoid of any reference to "forfeiture" or "penalty" but rather clearly emphasizes, as a condition precedent to payment, that employees who will participate in the payments at any such stage must still be employees of the defendants to qualify.

In support of the contention of plaintiffs, they cite two cases, *Grey v. A. Stein & Co.* (1st Dist. 1952), 348 Ill. App. 156, 108 N.E.2d 502, and *White v. Mandel Bros.* (1st Dist. 1928), 248 Ill. App. 313, which plaintiffs assert support their contention that the termination of an employee's employment prior to the date of payment of the amount in the bonus pool was unenforceable as a penalty. We note that in both *White* and *Grey*, substantial portions of the employee's total compensation (more than 50% in *White* to more than 25% in *Grey*) were to be paid in the form of commission or bonus at the end of the employment year, only if the employee remained in defendant's employ at the end of the year. The courts in both *White* and *Grey* based their determination of the validity of the forfeiture provisions upon whether those provisions were in the nature of liquidated damages or a penalty. Thus, the *Grey* court stated (at 348 Ill. App. 156, 159-60):

> "It would be an unreasonable and strained construction to hold that the parties intended that if plaintiff resigned December 30, 1948, one day before the end of the contract, he should forfeit all commissions accruing to that date. Such forfeitures are not favored in the law. (Citations.) Any damages which the defendant could possibly sustain under such circumstances would be wholly disproportionate to the amount which plaintiff would forfeit as commissions, and therefore the provision under the applicable law is regarded as a penalty instead of liquidated damages."

The distinction between the provisions classified as liquidated damages or penalties is not, however, determinative in the instant case. If plaintiffs had continued as employees, and if other employees had been discharged, plaintiffs would have benefited from the additional amounts in the bonus pool at payment times. In the instant case, application of the provision which disqualifies a nonemployed former employee in the bonus pool results in an increase of available amounts in such bonus pool to the employees, employed at payment times, and does not go to the employer, as was the circumstance in both *White* and *Grey*. The court in *Grey* was not called upon to determine whether the language constituted a condition precedent, since the court stated (348 Ill. App. 156, 159):

> "The provisions which follow subparagraph (d) clearly indicate a contrary intention of the parties."

It was, therefore, the ambiguity of the provisions contained in the balance of the contract which created the uncertainty and upon which the court relied in ruling as it did. In the instant bonus plan with which we are concerned, there are no provisions for payment upon disability, death or dismissal to contradict the bonus provisions which are precisely set forth.

In the other case cited, *White v. Mandel Bros.* (1st Dist. 1928), 248 Ill. App. 313, there was no contention by the employer that the language of the contract created a condition precedent to the employee's right to receive commission payments. In that bonus plan, the commissions which had accrued, were described as being "waived and released." The choice of those words clearly was tantamount to a forfeiture rather than a term describing a basis for qualification or a condition precedent. The *White* court, was, therefore, simply confronted with the issue of whether the intent of the party was to impose a penalty or provide for liquidated damages and the decision reached was correct. In *White*, also, the forfeited commissions reverted to the employer (as opposed to being spread among the other participants, which was the plan of distribution in the instant case).

Defendant, also, calls our attention to the innumerable cases of plans of pension and profit-sharing agreements which have been approved by the United States Internal Revenue Service, which restrict the vesting of benefits over a period of 10 years and provide that unless an employee remains in the employ of his employer for that period of time, he is not entitled to receive the total amount of contributions made in his behalf but that such amounts go to remaining qualifying employees. We are also aware that there are customary and standard provisions of such type, universally approved, and that a reasonable construction would indicate the determination that a clearly expressed condition precedent or basis for qualification is not invalid in requiring continued employment with the employer, at time of payments, as a basis for qualification.

■■ The language under the bonus plan creates a condition precedent which was defined in the case of *In re Estate of Albrecht* (2d Dist. 1975), 27 Ill. App. 3d 839, 841, 327 N.E.2d 317, where the court specified the following:

> "A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform."

In considering the language of the plan in the instant case, the trial court, in its opinion, found (at page 22 of the transcript of proceedings):

> "* * * there is a disadvantage by reason of this employee not being an employee at the time of the distribution, but I do not

think that is a penalty. That is merely a failure to qualify under the bonus plan."

In the instant case, the amounts which would be added to the bonus plan by reason of the nonqualification of the plaintiffs, become part of the bonus pool in which the current employees then employed would be entitled to participate. If the employer had paid such amounts to the plaintiffs, the employer would remain liable for such amounts to the remaining employees who were entitled to the full amount remaining in the bonus plan, as the only continuing employees who were qualifying for such participation.

Plaintiffs recognize that the employer has the right to discharge the employees-plaintiffs at any time with or without cause, but assert that somehow the employer would be required to retain the employees so that the employees could qualify for participation in the bonus pool. This is clearly inconsistent with the terminology of the language used and is, also, inconsistent with the factual circumstances relating to the bonus pool, since under the terms of the bonus pool, with respect to profits accruing during January and February, the amounts which were payable out of the bonus pool would only be paid on the following March 15, to the extent of one-third of such amount, with one-third to be paid on the following December 15 and the final one-third to be paid on March 15 of the year following that December. Obviously, under the agreement relating to the bonus pool, which was designed to provide for continuity of employment and payment to current employees of the employer only, there would be no time during the year when an employee could be discharged and still be a participant as a current employee, for payments from the bonus pool as to profits accrued during the period of employment. To follow the argument of plaintiffs logically, if such construction was adopted, it would make all employees permanent employees, with no right to terminate at any time, since the retention of any employee in the employment of the employer would generate a new period for such theoretical participation in the bonus pool and would require the continuous permanent retention of the employee. This is clearly inconsistent with the agreement or the rights and interests of the parties. It would mean that such employee could never be discharged, which is completely unsupportable as a matter of law.

For the reasons stated, therefore, we believe that the Circuit Court of La Salle County properly determined the validity of the bonus plan and properly determined that plaintiffs were not entitled to participate in such payments as were to be made after they were no longer employees.

■■ Plaintiffs agree that the employment of the plaintiffs by the defendants was without a fixed duration and could be terminated at any time by either party without cause or for any reason (*Donahue v.*

*Rockford Showcase & Fixture Co.* (2d Dist. 1967), 87 Ill. App. 2d 47, 230 N.E.2d 278). Plaintiffs, however, refer to the allegation in the complaint, specifically, that "his employment was terminated for the purpose of depriving him of his share of the bonus pool which had not been paid to him." This was the sole allegation in the complaint on this issue. It is noted that a motion to dismiss does not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact (*Wuellner v. Illinois Bell Telephone Co.* (4th Dist. 1944), 322 Ill. App. 284, 54 N.E.2d 853). As stated in *Roemer v. Zurich Insurance Co.* (1st Dist. 1975), 25 Ill. App. 3d 606, 610, 323 N.E.2d 582:

> "although well-pleaded facts must be taken as true, conclusions are not admitted and need not be accepted. * * * the motion to dismiss 'does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which the conclusions are based * * *.' "

Nowhere in the complaint are there any specific facts supporting the allegation which is quoted. There is no allegation in the complaint that defendants made any representations which were false (*Edwards v. Chicago & Northwestern Ry. Co.* (4th Dist. 1967), 79 Ill. App. 2d 48, 223 N.E.2d 163), nor were there any misrepresentations as to any present or preexisting facts alleged in the complaint (*Parker v. Arthur Murray, Inc.* (1st Dist. 1973), 10 Ill. App. 3d 1000, 295 N.E.2d 487). In absence of any false misrepresentation or concealment of fact or facts alleging a basis for fraud, we conclude that the trial court properly dismissed the amended complaint for failure to state a cause of action for fraud.

For the reasons stated, the order of the Circuit Court of La Salle County is affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.