JOSEPH CAMILLO, Plaintiff-Appellant, v. WAL-MART STORES, INC., Defendant-Appellee.

Fifth District   No. 5—90—0254

Opinion filed November 25, 1991.—Rehearing denied December 23, 1991.

William C. Evers III, of Collinsville, for appellant.

Stephen J. Maassen, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Joseph Camillo, appeals from the judgment of the circuit court of Madison County for defendant, Wal-Mart Stores, Inc., entered after the jury returned a verdict against plaintiff finding that he was not entitled to a *pro rata* share of an assistant manager's bonus following his termination from defendant's employ. In this cause, the issue we are asked to consider is whether, as a matter of law, plaintiff is entitled to a *pro rata* share of an assistant manager's bonus. We reverse.

Plaintiff began his employment with defendant on June 26, 1982, as an assistant manager trainee. Plaintiff was initially informed of the bonus program in question on that date. In January 1983, plaintiff

was promoted to the position of assistant manager. He was transferred to Fulton, Kentucky, in June of 1983. After two years in Kentucky, plaintiff was transferred to a store in Collinsville at his request. Plaintiff worked at the Collinsville store until his termination on December 31, 1986. Initially, plaintiff earned a salary of $250 per week. At the time of his termination, plaintiff was earning $375 per week. Plaintiff claimed that he was always given small raises but was induced to work the requisite 54 hours per week or more by the promise of the bonus. Representatives for defendant stated that the bonus paid to assistant managers was based solely upon length of service coupled with defendant's profits for the year as provided for in the management benefits program. Plaintiff received a bonus in all previous years of his employment.

The testimony showed that plaintiff experienced a series of reprimands regarding his work habits beginning in July 1986. Plaintiff was criticized on a number of occasions for sloppy housekeeping in his departments. Plaintiff was also criticized for not having his areas properly stocked. On one occasion, a regional vice-president observed plaintiff to be out of stock in a number of areas. In an attempt to motivate plaintiff, he was sent to another store for a week to learn office procedure in order to make him eligible to attend a regional management training seminar. Plaintiff took his scheduled day off during that week. The district manager, Curtis Morgan, was displeased that plaintiff took the day off and failed to work an entire week learning office procedure. Morgan felt it was one more indication of plaintiff's lack of enthusiasm for his job. Due to this incident, and due to plaintiff's overall lack of performance, plaintiff was given a decision-making day with pay for the purpose of deciding whether he wanted to continue his employment with defendant. The following day, plaintiff met with Curtis Morgan and stated that he wanted to continue working for defendant and would do all that was required of him. Plaintiff wrote a letter to this effect.

Plaintiff stated that he worked all his scheduled days in 1986. Plaintiff admitted, however, that there were days when he was asked to work extra but refused to do so. He took approximately two days off in order to attend his wife's grandmother's funeral. In order to do this, plaintiff traded time with other assistant managers and did not miss working the required number of hours. In early December 1986, plaintiff asked to be relieved of an assignment to Wisconsin because his wife was pregnant and due at any time. This request was granted. Plaintiff agreed that during 1986 he would not "go the extra mile for Wal-Mart."

Plaintiff was given two written evaluations in 1986, one in March and one in October. Overall, both evaluations indicated that plaintiff's performance was "satisfactory." Around the time of the October evaluation, plaintiff was told that he would not receive his usual pay raise for a period of 30 days. At the end of that 30 days, plaintiff's performance was to be reevaluated to determine whether he was entitled to his pay raise. The pay-raise issue was never discussed again. The Christmas shopping season began and all parties worked additional hours, as defendant does 30% of its annual business during the Christmas shopping season.

On December 31, 1986, at approximately 5 p.m., plaintiff was called to the office by Dennis Tidwell, the store manager, and Curtis Morgan, the district manager, and was terminated. At that time, Morgan told plaintiff that he did not think retail was for plaintiff. Morgan believed that plaintiff needed to try some other field. After plaintiff was told he was terminated, he inquired as to whether he would receive his assistant manager's bonus. According to plaintiff, he was told by Morgan and Tidwell that he would get a *pro rata* share. According to Tidwell and Morgan, plaintiff was told that he might be entitled to a *pro rata* share, but that they would have to check with the home office. It was later determined that plaintiff was not entitled to a *pro rata* share of the assistant manager's bonus.

Plaintiff brought this action to recover "wages" or "final compensation" under the Illinois Wage Payment and Collection Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 39m—1 *et seq.*). Plaintiff alleged at trial that he was entitled to a *pro rata* share of an assistant manager's bonus which had been set out in the management benefits program established by defendant. That program provided:

> "Our assistant managers are paid a bonus each year. The amount of the bonus is based on two things, corporate net profit and length of service. Length of service is determined from either your hire date as an assistant manager, or promotion date to Phase II trainee. The assistant manager or Phase II trainee must be hired or promoted by November 1st each year to qualify for any bonus. There are four categories of length of service for determining the amount of the bonus:
> (a) Three months to six months;
> (2) Six months to one year;
> (3) One year to three years;
> (4) Over three years.
> The assistant manager's bonus year is the same as the company's fiscal year, February 1 through January 31. The assist-

ant manager must be on the payroll and actively working on January 31, or they will forfeit their bonus."

At trial, plaintiff did not allege that the termination was a breach of an employment contract, as plaintiff agreed that he was an at-will employee. Plaintiff claimed that he was entitled to a *pro rata* share of the assistant manager's bonus. The parties stipulated that had plaintiff worked the entire 1986 fiscal year, from February 1, 1986, to January 31, 1987, plaintiff would have received a bonus of $6,045.22. Both plaintiff and defendant made motions for summary judgment which were denied. The jury found that plaintiff was not entitled to any portion of the assistant manager's bonus. After the jury returned its verdict, plaintiff made a motion for judgment notwithstanding the verdict (judgment *n.o.v.*), which was denied.

On appeal, plaintiff contends that the trial court should have entered judgment for plaintiff as a matter of law because the bonus in question was an earned bonus to which he was entitled to a *pro rata* share under section 2 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 39m—2). Section 2 of the Act states, in pertinent part:

"For all employees, other than separated employees, 'wages' shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation. Payments to separated employees shall be termed 'final compensation' and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." (Ill. Rev. Stat. 1989, ch. 48, par. 39m—2.)

Section 5 of the Act provides, in pertinent part:

"Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." (Ill. Rev. Stat. 1989, ch. 48, par. 39m—5.)

Plaintiff further argues that public policy mandates payment of a *pro rata* share of the bonus. According to plaintiff, that provision of defendant's program requiring employment on a specific date violates the requirements of good faith and fair dealing found in every contract. In support of his position, plaintiff cites *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 494 N.E.2d 581, in which two employees terminated from their positions were required to be compensated for earned vacation pay *pro rata* even

though they had not worked the entire calendar year as required by an agreement between the parties. Plaintiff also cites *Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 459 N.E.2d 1038, which held that severance pay is a form of deferred compensation, the right to which vests as much as the right to receive wages. Plaintiff argues that the bonus in question is analogous to vacation pay and severance pay and urges us to reverse the trial court's decision, finding that as a matter of law the bonus in question was earned and that plaintiff is therefore entitled to a *pro rata* share.

Defendant responds that the trial court properly refused to enter judgment for plaintiff as a matter of law because the management benefits program specifies that bonus payments are to be made only to persons actually in defendant's employ on January 31. Defendant contends that the language in the management benefits program is clear and unambiguous and contains a permissible condition precedent. Specifically, defendant contends that it is permissible to require an employee to be employed on a specific date in order to qualify for his bonus. In support thereof, defendant cites *Wilson v. La Salle Manufacturing & Machine Co.* (1978), 58 Ill. App. 3d 219, 374 N.E.2d 30. Moreover, defendant contends that the Act does not supersede or replace the provisions for compensation agreed upon by the parties in the management benefits program, as the Act merely is an instrument to be used to assist an employee in recovering wages. We find that while both parties' arguments are intriguing and thought-provoking, we are persuaded by the precedents set forth by our colleagues in the first district in *Golden Bear* and *Kulins.*

Before trial, both parties moved for summary judgment. Summary judgment is only appropriate if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) Summary judgments are to be granted with great caution and only where the moving party's right to such is clear and free from doubt. (*Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 496.) After the verdict was entered, plaintiff moved for a judgment *n.o.v.* In its order denying plaintiff's motion for judgment *n.o.v.*, the trial court stated:

> "Basically, the plaintiff reargues his Motion for Summary Judgment which was heretofore denied by the Court. His argument for Summary Judgment is not so clear that he is entitled to judgment without trial. Certain fact issues remained for resolution and were resolved by the Jury herein. The Jury consid-

ered language of the statutes relied on by Plaintiff and decided against any recovery. The resolution of this legal argument is not so clear or apparent to the Court that the Jury's verdict should be set aside ***."

While we agree with the trial court that it was inappropriate to enter summary judgment, we do not agree with the trial court's decision to deny plaintiff's motion for judgment *n.o.v.* A plaintiff movant is entitled to a judgment *n.o.v.* only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Here, the evidence, when viewed in the light most favorable to defendant, so overwhelmingly favors plaintiff that the jury's verdict cannot stand.

The real issue is what the General Assembly meant by the term "earned bonus." The Act itself fails to define "earned bonus." Likewise, the Act fails to define "earned vacation." (See Ill. Rev. Stat. 1989, ch. 48, par. 38m—1 *et seq.*) In *Golden Bear Family Restaurants, Inc. v. Murray*, a question arose as to the meaning of "earned vacation." The plaintiffs in that case, a restaurant chain and a retail department store, sought declaratory judgments that the Department of Labor had unreasonably interpreted section 5 of the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1981, ch. 48, par. 39m—5) by ruling that employees earned vacation *pro rata.* (*Golden Bear Family Restaurants, Inc.*, 144 Ill. App. 3d at 625, 494 N.E.2d at 587.) The employers had maintained in written policies that their employees would not be entitled to any vacation unless they remained employed into the following calendar year. As a result, an employee of the restaurant who was discharged after 10½ months of employment and an employee of the retail store who was discharged after 11¾ months of employment received no compensation for their vacation time after discharge. Upon filing of wage claims with the Department of Labor, both employees were awarded accrued vacation wages. The trial court agreed with the Department of Labor's interpretation of the statute, and its decision was affirmed by our colleagues in the first district, who stated:

"We conclude that [the Department of Labor's] interpretation of the Illinois Wage Payment and Collection Act—that an employee earns vacation pay *pro rata*—was reasonable and consistent with Illinois law and the law of other jurisdictions. Giving the language of the Act its plain and ordinary meaning, we disagree with plaintiffs' contentions that the statute looks to

the employment contract or employment policy to define an earned vacation. The Act expressly includes the monetary equivalent of earned vacation as part of the final compensation to discharged employees (Ill. Rev. Stat. 1981, ch. 48, par. 39m—2). Further, section 5 expressly forbids an employment contract or employment policy to forfeit an employee's earned vacation pay upon separation. Ill. Rev. Stat. 1981, ch. 48, par. 39m—5.

The vacation policies of plaintiffs do precisely this. Under both policies, Murray and Kilroy did not earn vacation pay *pro rata*; rather, their vacation pay depended on specific dates and was subject to forfeiture. Thus, plaintiffs' vacation plans violate section 5 of the Act.

Section 5 of the Act is also consistent with Illinois law. Generally, a party to a contract may not take advantage of a condition precedent the performance of which he has rendered impossible. (*Barrows v. Maco, Inc.* (1981), 94 Ill. App. 3d 959, 966-67, 419 N.E.2d 634, 639, citing *Goldstein v. Rosenberg* (1947), 331 Ill. App. 374, 375, 73 N.E.2d 171, 172.) Further, when an employee renders services to an employer, her right to receive the compensation that the employer promised vests as much as her right to receive wages or any other form of compensation. The lack of a promise to vest does not revoke the employer's obligation to pay. The employer must return those benefits that he derives from the continued labor of the employee. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 526, 459 N.E.2d 1038, 1044.) Additionally, we have held that an employee earns severance pay, another form of compensation, in part each week that he or she works. 121 Ill. App. 3d 520, 525, 459 N.E.2d 1038." *Golden Bear*, 144 Ill. App. 3d at 626-27, 494 N.E.2d at 589.

*Kulins*, cited in *Golden Bear*, was a class action suit brought by ex-employees of the defendant, a corporation, who moved for summary judgment as to their right to recover severance pay under the defendant's original severance pay policy initiated in 1967 rather than the defendant's 1975 modified policy which substantially decreased severance pay benefits. The trial court granted summary judgment for the plaintiffs and held that the 1975 policy terms were to be applied prospectively only and plaintiffs were entitled to severance pay earned under the 1967 policy. On appeal, the defendant argued that the plaintiffs did not have a vested right to severance pay under the 1967 policy. The First District Appellate Court held that severance

pay is a benefit for which employees work as much as they work for any other benefit held out to them as compensation by the employer, and it accrues during each year that an employment agreement is in effect, not only on the date that it becomes payable. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d at 525-26, 459 N.E.2d at 1044.) When services are rendered, the right to receive the promised compensation is vested so that pursuant to the 1967 policy, for every year of service, an employee's right to one week's severance pay vested. (121 Ill. App. 3d at 526, 459 N.E.2d at 1044.) The *Kulins* court also found support for its conclusion that severance pay is a vested right incapable of retroactive modification in the doctrine of promissory estoppel. The *Kulins* court commented:

"Promissory estoppel, an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct, is comprised of the following elements: (1) a promise (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee [*sic*], (3) which induces such action or forbearance, and (4) which must be enforced in order to avoid injustice. (*Feinberg v. Pfeiffer Co.* (Mo. App. 1959), 322 S.W.2d 163, 167-68; *Hilton v. Alexander & Baldwin, Inc.* (1965), 66 Wash. 2d 30, 31-32, 400 P.2d 772, 773-74.) In the present case, pursuant to the terms of the 1967 policy, Malco promised to pay severance benefits to plaintiffs in return for their continued employment. This promise induced plaintiffs to forego their right to seek and accept other employment which resulted in the benefit to Malco of industrial peace and avoidance of unrest on the part of its employees during a time of financial difficulty. Plaintiffs' reliance is presumed from both the contractual nature of their employment and from the continuation of their employment. (See *Anthony v. Jersey Central Power & Light Co.* (1958), 51 N.J. Super. 139, 143 A.2d 762; *Martin v. Mann Merchandising, Inc.* (Tex. Civ. App. 1978), 570 S.W.2d 208.) To allow Malco to retract its promise on the eve of termination, after years of reliance by plaintiffs would run counter to the fundamental principles of equity and justice, and raise a serious question as to Malco's compliance with the implied covenant of good faith, central to every contract. (See *Rao v. Rao* (7th Cir. 1983), 718 F.2d 219.)" 121 Ill. App. 3d at 527-28, 459 N.E.2d at 1045.

Applying the principles set forth in *Golden Bear* and *Kulins* to the case at bar, we find that "earned vacation" and "earned bonus"

should be interpreted similarly and that the proper interpretation is that, with a bonus such as the one in question, the employee earns the bonus *pro rata* just as he earns vacation pay *pro rata*. The employer set forth a condition precedent, namely employment on January 31, the last day of its fiscal year, and then made it impossible for plaintiff to fulfill that condition by firing him on December 31, 1986. Plaintiff worked the entire Christmas season, a notoriously difficult time for retail employees, only to be discharged as the last of the holiday shoppers exited and the rush of the season came to an end. Plaintiff's written evaluations throughout the year all indicated that plaintiff's job performance was "satisfactory." The last such evaluation was written in October 1986. The requirements of honesty and fair dealing require us to agree with plaintiff that he was entitled to a *pro rata* share of his bonus.

The principle of promissory estoppel is also applicable here. Defendant promised plaintiff a large bonus in return for his hard work during a minimum 54-hour work week. The bonus in question is not a mere pittance, but constitutes over 25% of plaintiff's earnings for the year. The promise of such a large bonus induced plaintiff to stay at the job.

Defendant cites *Wilson v. La Salle Manufacturing & Machine Co.* (1978), 58 Ill. App. 3d 219, 374 N.E.2d 30, for support of its position that it is permissible to require an employee to be employed on a specific date in order to be eligible for a bonus. While *Wilson* does support defendant's position, it is clearly distinguishable from the case at bar. First, *Wilson* was not brought to recover "wages" or "final compensation" under the Act (Ill. Rev. Stat. 1989, ch. 48, par. 39m—1 *et seq.*), as was the instant case. Second, the bonus in question in the *Wilson* case differed from this bonus plan. In *Wilson*, the bonus payments were made only to employees employed as of the date of payment, but the additional funds resulting from nonqualification of former employees became part of the bonus pool for current employees at time of payment of the bonus. (*Wilson*, 58 Ill. App. 3d at 220, 374 N.E.2d at 31.) In the instant case, plaintiff's uncollected bonus was not redistributed by defendant to its current employees, but was retained by defendant as profit. *Wilson* is distinguishable.

We are mindful of the latitude employers must have in operating their businesses and that intrusion into the business affairs of a corporation is not always desirable. (See *Kulins*, 121 Ill. App. 3d at 528, 459 N.E.2d at 1045.) We would not want this opinion to serve as a chilling effect on true "bonuses" given by employers to employees. Black's Law Dictionary defines a "bonus" as "[a] consideration or

premium paid in addition to what is strictly due. A gratuity to which the recipient has no right to make a demand." (Black's Law Dictionary 182 (6th ed. 1990).) However, the bonus in question is clearly compensation to which defendant was entitled to a *pro rata* share. Black's Law Dictionary does not give a separate definition for earned bonus, but does give the following definition for the word "earn": "To acquire by labor, service or performance *** to merit or deserve ***." (Black's Law Dictionary 508 (6th ed. 1990).) Plaintiff's service to defendant for 11 months of defendant's 1986 fiscal year entitles him to a *pro rata* share of the assistant manager's bonus.

We find that the trial court erred in refusing to enter a judgment *n.o.v.* for plaintiff. As the parties agree that $6,045.22 would have been plaintiff's bonus had he been employed by defendant on January 31, plaintiff is entitled to eleven-twelfths of that amount. We therefore enter judgment for plaintiff in the amount of $5,541.45.

For the foregoing reasons, the order of the circuit court of Madison County is reversed.

Reversed.

LEWIS and CHAPMAN, JJ., concur.