2022 IL App (1st) 211040-U
Order filed: August 18, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1040

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ZONGZONG (NICOLE) TAO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 21 L 003870 |
| SIMPLEX INVESTMENTS, LLC, | ) | |
| an Illinois Limited Liability Company; | ) | |
| ERIK SWANSON; and | ) | Honorable |
| MATT ZIMMERMAN, | ) | Michael F. Otto |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's dismissal of plaintiff's complaint, finding that terminated employee could not state a claim that she was entitled to an "earned bonus" under the Illinois Wage Payment Collection Act (Act) (820 ILCS 115/1 *et seq.* (West 2020)).

¶ 2    Plaintiff-appellant, Zongzong (Nicole) Tao, filed a one-count complaint against defendants-appellees, Simplex Investments, LLC (Simplex), her former employer; Erik Swanson, Simplex's Chief Executive Officer; and Matt Zimmerman, Simplex's Head of Trading (collectively, defendants), for a violation of the Illinois Wage Payment Collection Act (Act) (820 ILCS 115/1 *et seq.* (West 2020)), alleging that defendants, at the time of plaintiff's termination,

failed to pay her an earned bonus for her "excellent performance" in 2020. The circuit court granted defendants' motion to dismiss with prejudice pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)) finding that the applicable bonus provision was discretionary and not enforceable under the Act and denied her motion for leave to amend the complaint. On appeal, plaintiff argues that she sufficiently alleged that her performance was "excellent" as required by the bonus provision and was entitled to an earned bonus for 2020. She further argues that the circuit court erred in finding that an ambiguity in the bonus provision rendered her annual bonus discretionary and by failing to allow discovery to uncover extrinsic evidence of the actual meaning of the provision. We affirm.

¶ 3    In her complaint for a violation of the Act, plaintiff alleged that, on November 26, 2014, Simplex, by letter (offer letter), extended her an offer of employment to work as an options trader. The offer letter, which was attached to the complaint, explained the terms of plaintiff's employment and provided that she would report to Swanson. As relevant here, the offer letter included a "bonus eligibility" provision, stating: "Upon satisfactory completion of the 90-day probationary period, you will be eligible for participation in the company's bonus plan. This discretionary bonus plan pays annual year-end bonuses for excellent performance." Plaintiff signed the offer letter and began her employment in January 2015.

¶ 4    Plaintiff alleged that, from the beginning of her employment, she and her colleagues endured a hostile work environment stemming from the conduct of Zimmerman, a fellow options trader. At her year-end review in 2016, plaintiff complained about Zimmerman's conduct and in 2017, "Simplex [took] action to correct Zimmerman's behaviors." In 2019, Simplex promoted Zimmerman to head of trading, but he allegedly continued to be cruel and hostile toward plaintiff.

¶ 5    From 2015 through 2019, plaintiff received an annual bonus, ranging from $275,000 to $600,000, which depended on Simplex's overall profitability for the year under consideration. Plaintiff alleged that Swanson and Zimmerman were personally and chiefly responsible for setting these bonuses and that the bonuses were anticipated elements of the annual compensation package for traders, developers, c-suite executives, and front office staff members.

¶ 6    In December 2020, plaintiff participated in a year-end performance review with Swanson and Zimmerman. Plaintiff alleged that she did not receive any criticism or negative feedback on her performance and was not informed that her work was lacking or insufficient.

¶ 7    On January 25, 2021, plaintiff was called into a supplemental performance review with Swanson, Zimmerman, and a representative from Simplex's human resource department. Plaintiff was informed that a programming bug had existed in a trading algorithm that had been used by Simplex in January 2021, which resulted in the miscalculation of client fees related to trades. Zimmerman faulted plaintiff for not noticing the bug. Plaintiff alleged that she had no formal background in computer programs and that developers, not options traders, create the algorithms. The bug was corrected, but plaintiff was stripped of her responsibilities for building out and leading Simplex's retail options trading business. The developer, responsible for the bug, was not disciplined or terminated.

¶ 8    On February 8, 2021, plaintiff was called into a third "performance review" with Swanson, Zimmerman, and a representative from the human resource department and was fired, effective immediately.

¶ 9    The next day, Simplex informed its traders of the amount of their bonuses for 2020, allegedly Simplex's most profitable year. Plaintiff did not receive a bonus but contended that her performance had been "excellent."

¶ 10    Defendants filed a motion to dismiss asserting that the bonus provision in the offer letter was discretionary and therefore not enforceable under the Act. In the alternative, defendants argued that even if the bonus was not considered discretionary, plaintiff's performance, as alleged in the complaint, was not "excellent," and she was therefore not entitled to a bonus in 2020.

¶ 11    Plaintiff responded, arguing that the offer letter guaranteed her a bonus for "excellent performance" and formed an unequivocal promise to pay her a bonus for her performance in 2020, which she alleged had been excellent. Plaintiff maintained that defendants' arguments that her performance was not excellent demonstrated that there was a factual issue requiring discovery and precluded dismissal of her complaint. She further argued that because defendants had provided her a bonus in each of her first five years of employment, defendants had created an anticipated benefit. In the alternative, plaintiff sought leave to "amend her complaint to address any deficiencies under section 2-615."

¶ 12    After a hearing on the motion,[1] the circuit court issued a written ruling granting the motion to dismiss with prejudice and denying plaintiff's motion to amend the complaint. The court concluded that the language in the offer letter constituted a discretionary bonus and not an earned bonus. The circuit court's conclusion was based on its finding that:

> "The bonus language in [plaintiff's] offer letter is a clear-cut example of a discretionary bonus. Not only does the offer letter describe itself as a 'discretionary bonus plan,' receipt of a bonus is expressly conditioned on 'excellent performance.' Evaluation on an employee's 'performance' is literally the example given by the [Illinois Department of

---

[1] The report of proceedings on the hearing is not part of the record on appeal.

Labor (Department)] of an 'indefinite or uncertain' term which renders a bonus discretionary, rather than earned. [Citation.]."

¶ 13    Plaintiff timely appealed.

¶ 14    On appeal, plaintiff first argues that the circuit court erred in granting defendants' motion to dismiss the complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). Plaintiff maintains that pursuant to the offer letter, she was entitled to an "earned bonus," while defendants argue that based on the plain language of the offer letter, plaintiff's bonus was merely "discretionary" and not enforceable under the Act.

¶ 15    A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29. When reviewing a motion to dismiss pursuant to section 2-615, we accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Sherman v. Ryan*, 392 Ill. App. 3d 712, 722 (2009). We need not consider mere conclusions of law or fact unsupported by specific factual allegations. *Id.* at 722. An exhibit is incorporated into the complaint, and the exhibit controls where there is a contradiction between an exhibit and the allegations of the complaint. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18. We review a dismissal under section 2-615 *de novo*. *Lutkauskas*, 2015 IL 117090, ¶ 29.

¶ 16    The parties' dispute presents a question of statutory interpretation, an issue we also review *de novo*. *Schultze v. ABN AMRO, Inc.*, 2017 IL App (1st) 162140, ¶ 2 (citing *Andrews Kowa Printing Corp.*, 351 Ill. App. 3d 668, 675 (2004)). The rules applicable to statutory interpretation are well-established and summarized as to the Act in *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 541 (2009):

"In interpreting the [] Act, this court must ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of the legislature's intent is the language of the statute, which is given its plain, ordinary, and popularly understood meaning. [Citation.] Furthermore, when interpreting a statute, a court must presume that when the legislature enacted the law, it did not intend to produce absurd, inconvenient, or unjust results. [Citation.]"

¶ 17    The Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5 (West 2020). To plead a violation of the Act, a plaintiff must allege that "(1) the defendant was an 'employer' as defined in the [] Act; (2) the parties entered into an 'employment contract or agreement'; and (3) the plaintiff was due 'final compensation.' " *Schultze*, 2017 IL App (1st) 162140, ¶ 22 (quoting *Catania v. Local 4250/5050*, 359 Ill. App. 3d 718, 724 (2005)).

¶ 18    The parties do not dispute whether plaintiff adequately alleged that defendants were "employers" [2] or that the parties entered into an employment contract or agreement. Instead, the parties dispute whether plaintiff sufficiently alleged, or could allege that she was due "final compensation." The Act defines "final compensation" as "wages, salaries, earned commissions, *earned bonuses*, and the monetary equivalent of earned vacation and holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or

---

[2] The complaint alleges that Swanson and Zimmerman were "employers" as defined under the wage Act because they knowingly permitted Simplex to violate the Act by failing to pay plaintiff an accrued annual bonus that she earned in 2020.

agreement between the 2 parties." (Emphasis added). 820 ILCS 115/2 (West 2020). The issue here is based on the meaning of earned bonuses.

¶ 19    Although the Act does not define "earned bonus," this court has held that an "earned bonus" is one in which an employee was unequivocally promised a bonus by his or her employer. *McLaughlin*, 395 Ill. App. 3d at 544 (discussing federal court cases interpreting the Act). This court has further recognized that an employee is not entitled to a bonus pursuant to section 2 of the Act where there was no unequivocal promise to pay a bonus. *Id.* This distinction between whether or not the employee was unequivocally promised a bonus by the employer in determining whether a bonus is owed is consistent with the Department regulations construing the Act. *Id.*

¶ 20    The Act charges the Department with enforcement of the Act (820 ILCS 115/11 (West 2020)) and authorizes the Director of Labor and his representatives to promulgate regulations to administer and enforce the provisions of the Act. We give substantial weight and deference to these regulations, "as courts appreciate that agencies can make informed judgments upon issues that are related to their areas of experience and expertise." *McLaughlin*, 395 Ill. App. 3d at 544.

¶ 21    The regulations created by the Department provide that in order to receive payment under the Act, a bonus must be "earned" and not "discretionary or gratuitous." 56 Ill. Adm. Code 300.500 (2014). An employee is entitled to an "earned bonus," under the Act when there is:

> "an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met." *Id.* § 300.500(a).

A discretionary bonus is defined as:

"when the terms associated with the earning of the bonus are indefinite or uncertain, such as bonus being upon a positive evaluation of the 'employee's performance' and not when the earning of a bonus is based on objective factors such as length of service, attendance, or sign-on or relocation incentives." *Id.* § 300.500(d).

¶ 22    Here, plaintiff's allegations did not make a sufficient showing that she was entitled to an earned bonus under the Act. The offer letter, which governs the terms of plaintiff's bonus, states that plaintiff "will be eligible for participation in the company's bonus plan," a "discretionary bonus plan" that pays employees for "excellent performance." The terms of the bonus provision show that defendants had discretion to pay annual bonuses and that the payment was conditional and dependent on a subjective " 'positive evaluation' of [plaintiff's] performance and not \*\*\* based on objective factors such as length of service, attendance, or sign-on or relocation incentives" (see *id.*). The terms of the offer letter did not form an unequivocal promise to pay a bonus and therefore the bonus was discretionary.

¶ 23    *McLaughlin*, supports this conclusion. 395 Ill. App. 3d at 540. In *McLaughlin*, a former employee, filed a complaint seeking an earned bonus pursuant to the Act. The plaintiff's bonus was to be based on any annual increase in the percentage of the plaintiff's sales. *Id.* Prior to the end of the year, defendant terminated plaintiff's employment for cause and plaintiff filed a complaint seeking a *pro rata* share of his bonus. *Id.* at 540-41. The circuit court granted the defendant's motion for summary judgment. *Id.* On appeal, this court affirmed the circuit court's finding that the "bonus was clearly conditional, dependent on whether sales for defendant increased over the previous year," and not guaranteed to be paid. *Id.* at 544.

¶ 24    Here, similar to *McLaughlin*, there was no unequivocal promise or guarantee that the plaintiff would be paid a bonus. As discussed above, defendants, based on the terms of the bonus

provision, had discretion to pay a bonus, which was dependent on a subjective positive evaluation of plaintiff's performance. Therefore, the circuit court did not err in dismissing the complaint as plaintiff did not sufficiently allege that she was entitled to an "earned bonus" under the Act.

¶ 25 Plaintiff, citing *McCleary v. Wells Fargo Securities, LLC*, 2015 IL App (1st) 141287, argues that because she met the sole qualifying condition to receive a bonus, excellent performance, she was entitled to an earned bonus under the Act. We disagree.

¶ 26 In *McCleary*, plaintiff filed a complaint against his former employer for failure to pay him an earned bonus upon his termination when his position was eliminated. *Id.* ¶ 3. To qualify for a bonus under the plan, plaintiff had to satisfy certain factors including "achievement of corporate and practice group financial goals, a participant's performance ratings, compliance with the terms of the plan, and execution of a trade secret agreement" and bonuses were awarded when bonus pools were created. *Id.* ¶ 5. Under the bonus plan, bonus awards could be "adjusted or denied for any reason." *Id.* ¶ 6. At the time of separation, the defendants informed the plaintiff that, if a bonus pool was created, he would be included. *Id.* ¶ 8. The circuit court dismissed the complaint finding that the language of the plan gave defendant "absolute discretion" to award a bonus. *Id.* ¶ 13. On appeal, this court reversed the dismissal. *Id.* We found that plaintiff sufficiently alleged a violation of the Act where "plaintiff alleged that he was owed a bonus because he met all qualifying events under the plan, a bonus pool was created, other similarly situated employees in his group were awarded bonuses, and defendant wrongfully denied and retained plaintiff's bonus." *Id.* ¶ 29.

¶ 27 Plaintiff argues that, similar to *McCleary*, defendants here made a promise to pay a bonus in some amount when her annual performance was "excellent." She maintains that because she alleged that her performance was "excellent," all similarly situated employees were awarded an annual bonus, and defendants wrongfully and arbitrarily withheld her earned bonus, she adequately

alleged that defendants did not have discretion to award a yearly bonus, but only had discretion in the amount of the award.

¶ 28    However, unlike in *McCleary*, where the bonus award depended on objective factors, the bonus here, as set forth in the offer letter, depended on a subjective factor, a positive evaluation, and was explicitly discretionary with no guarantee. The offer letter as an exhibit to the complaint controls over any allegations to the contrary and the circuit court did not err in finding that plaintiff did not sufficiently allege that she was entitled to an earned bonus. *Gagnon*, 2012 IL App (1st) 120645, ¶ 18. Even if we could view the bonus provision in the offer letter as an earned bonus, plaintiff did not allege sufficient facts to show her performance in 2020 was excellent; she provided merely conclusory statements that her performance had been excellent. Plaintiff's allegations that defendants did not provide her with any criticism or negative feedback at her annual review is far from asserting facts to show her performance in 2020 had been "excellent."

¶ 29    Plaintiff citing *McCleary*, 2015 IL App (1st) 141287, and *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614 (1991), next argues that the presence of the word "discretionary" in the bonus provision of the offer letter did not preclude a finding of an "unequivocal promise" because the offer letter established the standard by which a bonus would be awarded, "excellent performance." As discussed above, the offer letter's use of "discretionary" is not the only indication that there was not an earned bonus. The bonus provision as a whole cannot be read as an unequivocal promise or guarantee that plaintiff would receive a bonus. The offer letter made clear that not only was the bonus discretionary, the award of a bonus would depend on a subjective performance evaluation. As discussed, under the Department's regulations, such a bonus is not an earned one.

¶ 30    *Camillo* is also distinguishable. In *Camillo*, this court found that the plaintiff was entitled to a bonus under the Act, reasoning that the bonus was an earned one as it was dependent on

plaintiff being on the payroll and actively working. *Id.* The award of a bonus was not tied to his performance, like the terms in the offer letter, but was tied solely to objective factors.

¶ 31 Plaintiff lastly argues that the circuit court erred in finding that the use of the term "excellent performance" made the bonus provision ambiguous and therefore made the bonus discretionary. She further argues that in finding the policy ambiguous, the trial court should have allowed discovery to develop extrinsic evidence to show the true meaning of the provision in the offer letter. Plaintiff asserts through discovery she would be able to show that every employee received a bonus each year and that defendants used specific objective metrics or factors to determine whether performance was excellent.

¶ 32 However, the circuit court did not find that the provision was ambiguous, instead it found that the offer letter contained a "clear cut example of a discretionary bonus" in that the use of the term "excellent performance" made the bonus indefinite and uncertain. The court then properly found that the bonus was discretionary under the Department regulations which define the nature of a discretionary bonus and that plaintiff's complaint failed to allege facts showing that defendants had violated the Act.

¶ 33 On appeal, plaintiff does not challenge or seek relief from the circuit court's denial of her motion for leave to amend the complaint. She has therefore forfeited any argument that the circuit court erred in denying her motion to file an amended complaint. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (an appellant forfeits points not raised in the initial brief).

¶ 34 For the foregoing reasons, we affirm the circuit court's dismissal of plaintiff's complaint for failure to state a claim for violation of the Act.

¶ 35 Affirmed.